FILED

AUG - 6 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Yosef Peretz (SBN 209288)
Emily A. Knoles (SBN 241671)
Michael D. Burstein (SBN 248516)
PERETZ & ASSOCIATES
22 Battery Street, Suite 202
San Francisco, CA 94111
Telephone: 415.732.3777
Facsimile: 415.372.3791

Attorneys for Plaintiffs
YESENIA GUITRON and JUDI KLOSEK

DMR

# UNITED STATES DISTRICT COURT

# FOR THE_NORTHERN DISTRICT OF CALIFORNIA

CV 10 3461

| | |
|---|---|
| YESENIA GUITRON; and JUDI KLOSEK, | CASE NO. |
| Plaintiffs, | **COMPLAINT AND DEMAND FOR A JURY TRIAL** |
| v. | |
| WELLS FARGO BANK, N. A.; PAM RUBIO; and DOES 1-20, | 1. Wrongful Discharge in Violation of Public Policy; |
| Defendants. | 2. Discrimination in Violation of Title VII; |
| | 3. Retaliation in Violation of Title VII; |
| | 4. Failure to Prevent Discrimination in Violation of Title VII; |
| | 5. Discrimination in Violation of FEHA; |
| | 6. Retaliation in Violation of FEHA; |
| | 7. Harassment in Violation of FEHA; and |
| | 8. Failure to Prevent Discriminatory Practices in Violation of FEHA. |

## I.   INTRODUCTION

1.      This is an action brought by Plaintiffs YESENIA GUITRON ("Guitron") and JUDI KLOSEK ("Klosek") (collectively, Guitron and Klosek are referred to herein as "Plaintiffs") against Defendants WELLS FARGO BANK, N. A. ("Wells Fargo"), PAM RUBIO ("Rubio"), and DOES 1-20 (all defendants are collectively herein referred as "Defendants") in connection with claims arising from Plaintiffs' employment with Wells Fargo.

2.      This action is predicated upon Wells Fargo's unlawful and unfair marketing practices that were implemented by Rubio at the branch she is managing for Well Fargo. Plaintiffs both refused to engage in those marketing practices and complained about those practices both internally and outside of Wells Fargo.  As a result, Plaintiffs have suffered, and continue to suffer, from harassment and retaliation by various Wells Fargo managers.

3.      Wells Fargo set forth unreasonably aggressive and ambitious marketing goals to its employees and managers through the implementation of the Daily Solution reward system. Consequently, the Daily Solution reward system fosters employees and managers at Wells Fargo to artificially increase bank activity and sell financial products to customers regardless of the need of those products and in breach of ethical and statutory duties owed by Wells Fargo to its customers.  Further, the implementation of the Daily Solution reward system by Wells Fargo also encourages its employees and managers to engage in fraudulent and even criminal activity, as well as it incentivizes managers to retaliate and harass employees that complain on those activities or disciple employees that refuse to engage in those activities for not meeting marketing goals.

4.      Plaintiffs suffered from the product of Wells Fargo's unlawful practices and bring this action to seek remedy for their grievances as set forth hereinunder.

## II.      JURISDICTION

5.      This action arises under Title VII of the Civil Rights Act of 1964 42 U.S.C. §2000e, *et seq.* ("Title VII").  This Court has original jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §1331.  This Court has supplemental jurisdiction over the California Government Code ("Gov't Code") claims pursuant to 28 U.S.C. §1367.

## III.     VENUE

6.      Venue is proper in the United States District Court, Northern District of California, pursuant to 28 U.S.C. §1391, because Wells Fargo conducts business in this district and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this district.

## IV.     PARTIES

7.      Guitron is and at all relevant times was a resident of the City of Napa, California.  Guitron was hired by Wells Fargo as a Personal Banker, Grade I, and worked in the St. Helena branch ("St. Helena" or the "St. Helena branch") in that capacity from March

2008 through her termination in January 2010. At all times relevant to this Complaint, Guitron was an employee within the meaning of Title VII.

8.      Klosek is and at all relevant times was a resident of the City of Napa, California. Klosek was hired by Wells Fargo as a Licensed Personal Banker, Grade II, for the Sonoma branch of Wells Fargo (the "Sonoma branch") in September 2008. Klosek worked in that capacity until June 2009 when she was transferred to the St. Helena branch where she continues to be employed. At all times relevant to this Complaint, Klosek was an employee within the meaning of Title VII.

9.      Wells Fargo is a financial institute and is, upon information and belief, based in South Dakota. Wells Fargo is a subsidiary of Wells Fargo & Company. Wells Fargo is, and at all times relevant hereto has been, authorized to, and does, conduct business in the State of California. Wells Fargo maintains numerous branches and offices in California wherein it has engaged in wrongful conduct against Plaintiffs. Wells Fargo was at all relevant times an employer within the meaning of Title VII.

10.     Rubio is and was at all relevant times the St. Helena branch Manager of Wells Fargo and lives in Rutherford, California. Rubio supervised Klosek and Guitron at the times they were employed at the St. Helena branch. At all relevant times to this Complaint, Rubio was an "agent of" Wells Fargo, and as such was an employer within the meaning of Title VII.

11.     Does 1-20 are defendants whose names are unknown and who shall be named once their identities are ascertained. Upon information and belief, Defendants are agents of the others and they are all managed and controlled by the same individuals and had and/or have the same policies and practices with regard to the employment of Plaintiffs. The true names and capacities, whether individual, corporate, associate or otherwise, and the true involvement of defendants sued herein as Defendants Does 1-20, are unknown to Plaintiffs who therefore sue said defendants by such fictitious names and will amend this Complaint to show the true names, capacities and involvement when ascertained. Plaintiffs are informed and believe and thereon allege that each of the defendants designated as a Doe is responsible in some manner for the events and happenings herein referred to, and that Plaintiffs' injuries and damages as hereinafter set forth were proximately caused by said Defendants. Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, each of the Defendants sued

herein was the agent and/or employee of each of the remaining Defendants, and each of them, was at all times acting within the purpose and scope of such agency and employment.

## V.    FACTUAL ALLEGATIONS

### A.    The Daily Solutions Reward System at Wells Fargo

12.    Wells Fargo provides financial-based incentives to all Personal Bankers for inducing clients and potential clients to open, respectively, additional or new accounts, as well as utilize other financials products and services offered by the bank such as ATM cards, credit cards, checks, saving accounts and brokerage accounts.    Each new or additional financial product that is sold by a banker to a customer is counted by Wells Fargo as a Daily Solution. The various financial products have a different "value" of Daily Solutions that is based on its internal value to Wells Fargo.

13.    Daily Solutions' incentives were provided to Wells Fargo employees for the performance of not only the individual banker but also at the branch and even the region level. All Personal Bankers are obligated to secure a quota of Daily Solutions, and if a Personal Banker fails to meet his or her quota on any given day, the next day's quota could be increased or other disciplinary measures could be taken against that banker.    If a Personal Banker meets the quota of Daily Solutions, he or she receives incentive-based bonus compensation accordingly.

14.    Similarly, Wells Fargo branches and regional managers have a quota of Daily Solutions in such that both the employees' and the management team's performance is measures through the success in meeting or exceeding those quotas by earning financial incentives or be subjected to disciplinary actions as a result.

15.    Rubio was primarily responsible for implementing the Daily Solutions incentive program at the St. Helena branch.    As part of her duties and responsibilities, Rubio has the exclusive discretion in deciding which Personal Bankers would get referrals of prospective new or existing customers that would likely lead that banker to earn or exceed the quota of Daily Solutions.

16.    Rubio required the bankers of the St. Helena branch to "solution driven" where the focus was the number of Daily Solutions obtained by each member of the branch's team regardless of the quality of the financial products sold to customers, the need of those customers to those products and the method by which those solutions were obtained.

17.     Upon information and belief, Rubio's "solution driven" approach in the management of her employees' performance is based upon Wells Fargo's banking practices that are focused on profit-generating activity on the expense of its employees and customers.

**B.     Factual Allegations Pertaining to Guitron**

**1.     Guitron Refused to Engage and Complained about Unlawful and Fraudulent Practices**

18.     Guitron is a single mother of two and the sole provider for her family.

19.     Wells Fargo hired Guitron in March 2008 as a Personal Banker, Grade I. Guitron worked in that capacity in the St. Helena branch for the entirety of her employment with Wells Fargo. Her direct supervisors were Rubio and Isook Park, St. Helena's Operation Manager ("Park").

20.     As a Personal Banker, Grade I, Guitron provided banking services to bank customers, including, but not limited to, seeking out for new customers, servicing existing customers, and processing loans. Particularly, Guitron was required to seek out to open new accounts for new customers and seek out to open additional accounts for existing customers.

21.     Guitron informed Rubio during her job interview that she has extensive experience working with customers and that she is "relationship driven" rather than "solution driven". Rubio told Guitron that this is not a problem and that in fact the branch needed bankers like her.

22.     Guitron excelled in her capacity as a Personal Banker. She was voted Employee of the Month three times and was selected by the customers as their favorite banker multiple times. Guitron had no personnel or disciplinary warnings from Wells Fargo until she raised concerns about fraudulent an unethical banking activities in March 2009.

23.     In June 2008, approximately two months after she started at Wells Fargo, Guitron began to notice irregular sales activities with regard to the implementation of the Daily Solutions program. At that time, several of Guitron's complained that another Personal Banker at the St. Helena's branch, Corina Zavaleta ("Zavaleta"), was opening and/or closing accounts without their permission. Alarmed by this activity, Guitron called Judy Bowman who served as her bank-trainer and assisted her with addressing work-related questions, to discuss these activities. Ms. Bowman informed Guitron that she should first contact her manager and, if the problems persisted, she should then contact Wells Fargo's Ethics Hotline.

24. On or about March 3, 2009, Guitron made her first complaint to Rubio about Zavaleta's banking practices. Specifically, Guitron told Rubio that she received numerous complaints from customers about paying service charges when Zavaleta had promised them outright that accounts she sold them were free of service charges. In a follow up email sent that day, March 3, 2009, Guitron alerted Rubio again that various customers have complained to her that Zavaleta promised them a "free bank account" as an incentive to open new accounts that ultimately resulted in the accrual of Daily Solutions by Zavaleta for those accounts.

25. Between March and August 2009, Guitron continued to raise concerns with Rubio about irregular and unlawful banking practices of Zavaleta. Guitron specifically complained about Zavaleta's consistent "gaming" of the Daily Solutions system at the expense of her clients through actions like closing and opening of accounts without clients' consent for the sole purpose of receiving credit for Daily Solutions, opening accounts without the consent or authorization of the prospective clients, providing partial or all funds to clients so that they meet the minimum requirement to open a bank account. Despite her consistent communication of customer complaints about Zavaleta to Rubio, Guitron witnessed no change in the conduct or management of Zavaleta.

26. In August 2009, Rubio and Park asked to meet with Guitron and the meeting took place on or about August 19, 2009. During this meeting, Guitron was asked by Park if she felt Wells Fargo managers were taking her complaints seriously. When Guitron responded "no," she was accused by Park and Rubio of harassing Zavaleta and having an affair with a coworker. Guitron left the meeting feeling humiliated, harassed and retaliated against by Park and Rubio. Further, as yet another mean of retaliation, on or around August 25, 2009, Guitron received a negative performance review by Rubio when all of her previous performance reviews were positive.

27. The management team at the St. Helena branch refused to take any steps to investigate or curtail the conduct of Zavaleta, therefore, on or about August 26, 2009, Guitron called the Ethics Hotline to express her ongoing concerns about Zavaleta's irregular and unlawful activities.

28. On or about August 27, 2009, Guitron emailed Greg Morgan, the Regional Manager of Wells Fargo, to express concerns about Rubio's and Park's accusation during the August 19, 2009, that she was harassing Zavaleta. In response to this email, Guitron was first

reprimanded by Mr. Morgan for failing to "follow the proper chain of command" before contacting him and was also accused of making false accusations about Diana Brandenburg, who was a Human Resources Manager of Wells Fargo at that time. Mr. Morgan gave no response to the actual concerns expressed by Guitron.

29. The harassment against Guitron escalated through September 2009 when Guitron became the sole employee that was required to make written requests to pick up her daughter from school during her meal and rest breaks and later was subjected to an alternative meal and rest break schedule for her request. Other employees that picked up their children during their breaks were not subjected to the same requirements or an alternative break schedule such as Guitron.

30. Additionally, Guitron was regularly marked up as tardy, if she arrived a few minutes after 9:00 a.m. whereas other employees were not reprimanded in any fashion for being similarly tardy.

31. On or about October 9, 2009, upon an instruction given by Rubio, Park demanded that Guitron notarize the signature of a person while that person who was not present at the branch that time. Specifically, Guitron was instruction to notarize an affidavit for a domestic partnership that was purportedly signed by the partner of Kelly Beglin, a teller at the St. Helena branch at that time. Ms. Beglin's partner was not present at the St. Helena branch, nevertheless, Park demand that Guitron notarize the document, Guitron refused to engage in this unlawful activity and was faced with retaliatory and abusive conduct by Park and Rubio as a result of that.

32. As no response had come to her previous complaints, on or about October 14, 2009, Guitron requested an official meeting with Ms. Brandenburg regarding the fraudulent banking practices going on at the St. Helena branch. During this meeting, Guitron specifically reported to Ms. Brandenburg the following practices were not only commonplace, but were openly tolerated by branch management:

    a.    falsification of customers' identification and using falsified documentation to open new bank accounts and earn Daily Solutions;

    b.    falsification of background information about customers so they will become eligible for banking products, and thus earning the bankers with more Daily Solutions;

    c.    closing and opening accounts without consent or authorization of the

1    customers so that bankers could earn more Daily Solutions;

2            d.    falsifying bank documents in order to receive sales credit and qualify for
3    incentive payout;

4            e.    paying customers for opening-deposits to be deposited in accounts that
5    were opened at the Hispanic Farmer's Camps workshops in order to encourage people to open
     accounts and thus earn more Daily Solutions;

6            f.    the October 9, 2009 incident in which Park demanded Guitron to
7    notarize a signature on an official document wherein the signatory was not present at the
8    branch at that time;

9            g.    that Rubio was supporting and encouraging Zavaleta's practice of
10   fraudulently earning Daily Solutions; and

11           h.    that Rubio and Park were retaliating against her for complaining about
12   Zavaleta's activities, *inter alia*, by receiving a negative performance review by Rubio shortly
13   after the August 19, 2009, meeting with Rubio and Park and by making false accusations that
     she was having an affair with her co-worker.

14       33.    Ms. Brandenburg refused to respond to the complaints lodged by Guitron at the
15   aforementioned meeting or provide Guitron with any follow up information about her
16   complaints.  As such, Guitron sent an email to Felix Fernandez, the Regional President of
17   Wells Fargo, on those complaints, on October 24, 2009.  In this email, Guitron stated the
18   aforementioned ethical violations and fraudulent activities she believed were commonplace, if
19   not encouraged, at the St. Helena branch.  Guitron also sought Mr. Fernandez's intervention
20   because she had not received responses from either Mr. Morgan or Ms. Brandenburg on her
21   complaints.

22       34.    Furthermore, despite the numerous complaints and concerns raised regarding
     the conduct of Zavaleta, in November 2009, Zavaleta was selected by Rubio to be the
23   Employee of the Month at the St. Helena branch.

24       35.    On or about November 10, 2009, Guitron again witnessed the falsification of
25   information in order to obtain Daily Solution by an Assistant Manager at St. Helena branch,
26   Mary Crisp.  On that day, a customer presented Guitron with an expired Mexican identification
27   document, a Mexican Metricula card, in order to open a new bank account.  Upon serving that
28   customer, Guitron also noticed that over 30 other accounts and services were provided to this

customer by Zavaleta in the past. Wells Fargo policies do not allow bankers to open a new bank using an expired identification document, therefore, Guitron executed herself and went to inform Ms. Crisp of the situation. Ms. Crisp nevertheless proceeded to open the bank account by falsifying the expiration date on the banking records because the branch was "hurting" for solutions that time.

36. Guitron followed up and reported the incident with Ms. Crisp to the Ethics Hotline, and then emailed Park about this situation. Park did not respond to this email in any way nor did she take any further steps to investigate the situation or disciple Park or Zavaleta for violating Wells Fargo policies.

37. On or about November 13, 2009, and after many requests were made by Guitron subsequent to the October 14, 2009 meeting, Ms. Brandenburg met with Guitron to address her complaints of retaliation by Rubio and the increasing instances of unethical sales practices. In this meeting, Guitron again raised concerns that she was being retaliated against for making complaints about fraudulent banking activities. Ms. Brandenburg was very combative and defensive with Guitron about the complaints, and specifically made up excuses for the employees on which Guitron complained about. Finally, in response to Guitron's request that the matters be investigated, Ms. Brandenburg responded that she will be researching those matters but she is not able to tell Guitron how long it will take her to complete her "research".

38. While Guitron was guaranteed confidentiality about the content of their discussions, a few days after the confidential meeting, Rubio called Guitron shortly after the meeting with Ms. Brandenburg and informed her that she was not being retaliated against. As such, Guitron is informed and believes that Ms. Brandenburg specifically discussed the complaints made by Guitron with Rubio.

39. On or about November 17, 2009, Mr. Morgan finally agreed to meet Guitron on her complaints. At the beginning of this meeting Mr. Morgan advised Guitron that he is fully aware of her complaints and what has been going on at the St. Helena branch. However, rather than acknowledge and address the serious allegations made by Guitron, Mr. Morgan accused her of being "obsessed" with focusing on other employees. Mr. Morgan then made a veiled threat that she should not report other employees' activities as it would be "bad" for her employment with Wells Fargo, and informed her that from that day forward she was to just focus on her own and stop worrying about what other employees were doing.

40.     When Guitron returned to the St. Helena branch after her meeting with Mr. Morgan, she learned that Zavaleta has resigned. Guitron is informed and believes that Zavaleta resigned at the suggestion of Rubio and Mr. Morgan, in order to avoid investigation by Wells Fargo or third parties of the unlawful activities at the St. Helena branch.

41.     On or about December 14, 2009, Damian Brown, a Human Resources representative of Wells Fargo, asked Guitron to attend a telephone conference regarding the complaint lodged against Ms. Crisp for falsifying documents. Rubio insisted on sitting in on the teleconference and asking questions about the November 10, 2009, incident regarding Ms. Crisp. Guitron stated during the teleconference that she was uncomfortable with Rubio's presence and the fact that her complaint was being handled over the phone. Guitron's concerns were ignored and as such, she reiterated her original complaint that Ms. Crisp had falsified bank documents in order to gain Daily Solutions. After the teleconference Guitron emailed her formal statement to Mr. Brown. Guitron was never advised on the results of this investigation one way or the other and Guitron is informed and believes that no further investigation was conducted by Wells Fargo on this matter.

42.     On December 26, 2009, Guitron emailed Rubio again expressing concerns about the investigation into the conduct of Zavaleta and whether any follow up would be made to on her various complaints. On or about, January 2, 2010, Rubio responded by stating that she had no knowledge of *any* pending investigation into Zavaleta's conduct and made no attempts to address the rest of Guitron's concerns.

43.     On or about January 2, 2010, the St. Helena branch hosted a "friends and family day" event in an effort to obtain new customers. As part of the "friends and family day" customers were given the opportunity to select the Employee of the Month for that month. Despite the ongoing harassment and retaliation she was suffering, the customers selected Guitron to be Employee of the Month, evidencing her excellent customer relations and high level of performance. Nevertheless, Chris Jensen, the Customer Service Manager of the St. Helena branch at that time, told Guitron that very day that if she did not bring in at least three new checking accounts *on that day* she would be "singled out and embarrassed" by management in front of her coworkers.

44.     On or about January 12, 2010, Guitron was interviewed by Jodi Jacques, a Human Resources Consultant for Wells Fargo, upon the request of the later. Ms. Jacques

informed Guitron that the purpose of the meeting was to discuss the atmosphere at the St. Helena branch. Ms. Jacques also informed Guitron that this meeting was not part of any official investigation. In this meeting, Guitron informed Ms. Jacques that she had concerns on the following: (1) fraudulent banking practices at the St. Helena branch; (2) management's refusal to investigate complaints about these practices; and (3) management's retaliation against her for raising these complaints. Rather than address any of these issues, Ms. Jacques told Guitron that she should focus on her own work and also suggested that the problem was with Guitron and that perhaps she is not a "good fit" for Wells Fargo. Guitron received no follow up and was never informed that any investigation into her complaints took place as a result of her meeting with Ms. Jacques.

45. In or around January 2010, in further retaliation for Guitron's ongoing complaints of unethical conduct, Rubio began contacting Guitron's customers to question them about Guitron's work and look for flaws or bad conduct on the part of Guitron.

46. On or about January 15, 2010, having received no response from Ms. Brandenburg since the November 13, 2009, meeting and no response from Mr. Morgan since the November 17, 2009 telephone call, Guitron contacted Susan Eagles-Williams, the District Head of Wells Fargo Human Resources via email and made her aware of the situation.

47. On January 26, 2010, Ms. Eagles-Williams requested a teleconference with Guitron about the emails sent to her on January 15, 2010.

48. The next day, January 27, 2010, Guitron realized that her access to the Wells Fargo computer system was blocked unbeknownst to her. Immediately thereafter Guitron was called for a meeting by Rubio at which she was terminated by Rubio for insubordination. Guitron was specifically told at that meeting to immediately turn in her keys, clear out her desk and was escorted by management out of the bank.

49. A few days after her termination Guitron requested that she be given access to the branch to take her possession because she was terminated. In response, Guitron was informed by Hale Walker, the District Manager overseeing the St. Helena branch ("Walker"), that she was merely placed on administrative leave and that the alleged termination was a "misunderstanding." Guitron informed Walker that she did not believe that her termination was a "misunderstanding" because Rubio never informed her that she is placed on an administrative leave and she was directly instructed her to clean out her desk and then escorted

off the premises.  In response, on February 12, 2010, Walker sent her a letter stating that she had "voluntarily resigned" as of February 11, 2010.

50.     At various times during 2009, Guitron made complaints to Wells Fargo on fraudulent and unlawful practices at the St. Helena branch that included but were not limited to the following:

a.     opening checking, savings, money market, or credit card accounts for customers without their knowledge or consent;

b.     providing false information on applications for banking products;

c.     unlawfully opening accounts over the phone;

d.     soliciting elderly or otherwise vulnerable customers to open accounts or take out additional equity lines of credit despite the customers' lack of understanding;

e.     opening account for customers who lacked the language or cognitive capacity to understand the effects;

f.     enrolling customers for bank products without the customers' knowledge or consent;

g.     falsifying bank records in order to open bank account and generate bones-driven bank activity; and

h.     making false promises to customers, such as that accounts are "free" to entice them to buy and obtain more financial and banking products.

51.     Upon information and belief, employees and managers at the St. Helena branch were engaged on these fraudulent and unlawful practices reported by Guitron primarily to meet Wells Fargo's marketing goals, to obtain financial incentives and to avoid discipline and consultation for failure to meet those marketing goals.

52.     On information and belief, Wells Fargo did nothing to investigate or remedy the practices that were the subject of Guitron's complaints.  Instead, Wells Fargo and Rubio continued with their harassment and retaliation against Guitron.  Specifically, Guitron's job performance was constantly criticized and she was placed on Verbal Probation for tardiness. Additionally, beginning in or around September 2009 and continuing through the remainder of Guitron's employment, Rubio ensured that the referrals of existing and new customers that were interested in financial products were diverted away from Guitron so she could not meet the minimum Daily Solutions quota and receive no bonuses.  Finally, Guitron was terminated

1   by Wells Fargo as a product of retaliation.

2       **2.      Guitron was Subjected to Discrimination and Harassment Based on**

3          **Her Status as a Single Mother Who is Divorced**

4       53.     Throughout the period between Guitron's first complaint of unethical behavior

5   by Zavaleta and Guitron's termination, Rubio and Park subjected Guitron to unwelcomed,

6   unprofessional and insulting comments related to her status as a single, divorced woman and

    single mother.

7       54.     Rubio engaged in harassing conduct that included but not limited to the

8   following:

9           a.      with the knowledge and consent of Rubio, Park and other branch

10  managers asked Guitron on numerous occasions to "shake her skirt" and wear immodest

11  clothing to attract customers to the bank;

12          b.      despite this unwelcomed encouragement, Guitron was counseled by

    Park, at the direction of Rubio, for allegedly dressing too provocatively, while other

13  employees, including Rubio, dressed in violation of the dress code at Wells Fargo;

14          c.      Park often harassed and badgered Guitron about who she was dating,

15  made comments about her status as a single women, and told her that she should bring her

16  "many" boyfriends in to open bank accounts; and

17          d.      Park and Rubio baselessly and falsely accused Guitron of having an

18  affair or a romantic relationship with several other bank employees, which led to a human

19  resources investigation into Guitron's relationship with a co-worker.

20      55.     In addition to the statements made about her status as a single woman, Rubio

21  harassed Guitron because she was a single mother.  On numerous occasions Guitron was

    required to be a few minutes tardy for work because of issues related to her children.  On those

22  occasions, Guitron was reprimanded by Rubio or by other managers at Rubio's direction and

23  was told that her tardiness was unacceptable.  However, when other, non-single mothers, were

24  also tardy on a regular basis they were not given any reprimands.

25      56.     When Guitron was required to be absent to care for her children, she was often

26  harassed by Rubio for the basis of her leave and falsely accused of faking her children's illness

27  in order to avoid working.  Similarly, on occasions that Guitron had to leave early due to

28  family issues, Rubio harassed her and delay approval for no apparent reason.  In contrast, other

employees were allowed to take time off or to leave early without any hassles and without the need to get approval in advance.

57.   In April through May 2009 Guitron applied for a family leave to care for her sick child under the Family and Medical Leave Act ("FMLA").   Park, however, made the decision to pay Guitron vacation time for a week, making Guitron's request for family leave to be automatically disqualified.   As a result, Guitron lost the ability to apply for FMLA for a significant time in which her child hospitalized and lost pay that time.

58.   Furthermore, Guitron received poor performance reviews from Rubio as a result of Guitron's status as a single mother.   Specifically, in the original 2009 performance review for Guitron, Rubio (1) noted that Guitron is "having a hard time" being at work on time because of family issues (2) noted incorrectly that Guitron tardy; and (3) noted an 18-day leave of absence as 18 different incidences of absence by Guitron.   Based on these comments and other negative comments made by Rubio, Guitron was given a negative performance review that stood inapposite to prior review of her job at Wells Fargo.

59.   Guitron was also denied accommodations related to her status as a single parent, despite properly-made requests.   Rubio required Guitron to attend staff meetings that began prior to regular working hours and participate in night calls with prospective clients after regular working hours.   These additional hours forced Guitron to pay for additional child care and find alternative transportation for her children.   When Guitron asked that these meetings and/or calls be altered to accommodate her needs, Rubio refused to that request wherein an alternative time could have been set for those meetings without undue burden.

60.   Guitron is informed and believes that she was harassed, discriminated and retaliated against by Rubio and Wells Fargo because she made complaints about unethical conduct and because of her status as a single woman and mother.

61.   Guitron further contends that Wells Fargo (a) failed to properly train all supervisory employees, including Rubio, regarding discrimination and harassment in the workplace; (b) failed to enforce discrimination and harassment procedures; (c) failed to prevent the discriminating and harassment against Guitron by Rubio and other employees at the St. Helena branch; and (e) failed to ensure compliance with anti-discrimination and anti-harassment laws.

62.   As a result of the treatment, retaliation and eventual termination by Rubio and

1    other Wells Fargo management, Guitron suffered extreme stress and anxiety, which resulted in

2    a two week migraine that required hospitalization, amongst other physical manifestations.

3           63.    In response to Defendants' conduct, on or about June 23, 2010, Guitron filed a

4    Complaint of Discrimination, Harassment and Retaliation against Wells Fargo with the Equal

5    Employment Opportunity Commission ("EEOC").  On July 6, 2010, in response to Guitron

     request, the EEOC issued a Notice Of Right To Sue to Guitron that was received by Guitron on

6    or about July 8, 2010.  True and correct copies of the above Complaint and Notice are attached

7    hereto as Exhibit "A".

8           64.    Additionally, Guitron filed Complaints of Discrimination, Harassment and

9    Retaliation against Wells Fargo and Rubio with the California Department of Fair Employment

10   and Housing ("DFEH") on or about June 8, 2010.  In response to Guitron's request, on or

11   about June 18, 2010, the DFEH issued Notices Of Right To Sue, which Guitron received on

12   that same day.  True and correct copies of the above Complaints and Notices are attached

13   hereto as Exhibit "B".

     **C.     Factual Allegations Pertaining to Klosek**

14          **1.     Klosek Refused to Engage and Complained about Unlawful and**

15                 **Fraudulent Practices**

16          65.    Klosek is 65 year old, Caucasian female with a legal and financial planning

17   background.

18          66.    Klosek began working for the Sonoma branch in September 2008 as a Personal

19   Licensed Banker, Grade II.   In this role Klosek provides services including, but not limited to,

20   opening new accounts, servicing accounts and processing loans for high end customers.

21          67.    As a Personal Licensed Banker, Grade II, Klosek was also obligated to secure at

22   least 5.5 Daily Solutions per day and obtaining minimum quarterly assets in the amount of

     $300,000 for the bank.

23          68.    While employed at Wells Fargo, Klosek excelled in her position.  In addition to

24   being recognized for her accomplishments by her superiors, she has received a merit-based

25   raise in 2009.

26          69.    In November 2008 and continuing through February 2009, Klosek was required

27   to take a medical leave of absence for health reasons.  After she returned from her leave of

28   absence, Klosek witnessed unethical practices by other bankers at the Sonoma branch,

including but not limited to, bankers opening and closing accounts improperly to increase their Daily Solutions numbers, forcing banking solutions on customers when the customers were clearly confused by the product and did not necessarily want or need the product, and failing to disclose necessary information to customers.

70.     In April 2009, Klosek made complaints to Wells Fargo's Ethic's Hotline about the unethical practices she had witnessed in the Sonoma branch. Additionally, Klosek made verbal complaints to Ms. Brandenburg about the same unethical practices. Klosek was never contacted about these complaints and has no knowledge if Wells Fargo ever took any steps to follow up on the allegations against the bankers at the Sonoma branch.

71.     Shortly after Klosek made the aforementioned complaint to the Ethic's Hotline, she was subjected to harassment and discrimination by her supervisor John Alejo ("Alejo") that included but not limited to, criticizing Klosek for walking too slow because of her age, calling her a "Wal-Mart greeter", criticizing Klosek for things outside her control, telling Klosek that she did not "fit in" at the branch because of her age, sending Klosek less customers with the potential to earn Daily Solutions and precluding Klosek from participating in staff meeting activities. Klosek is informed and believes that Alejo's harassment and discrimination was based on Klosek's age, medical leave and reporting of violations to the Ethic's Hotline.

72.     In June 2009, after her complaint to the Ethic's Hotline went unacknowledged and Alejo's conduct went unabated, Klosek requested a transfer to another branch.

73.     Klosek was transferred to the St. Helena branch, a less desirable location then the Sonoma Branch, by Ms. Brandenburg. At the time, Ms. Brandenburg informed Klosek that she would "fit in" better at St. Helena because there were "older employees" there. However, the majority of the bankers and other employees at the St. Helena branch were under the age of 40 and not Caucasian. Since Klosek transferred to St. Helena, she has been the only banker over the age of 40 and the only Caucasian banker that was not a part of management.

74.     Rubio was at all relevant times the branch manager at St. Helena and Klosek's supervisor during her tenure at the St. Helena branch.

75.     Upon transferring to the St. Helena branch, Klosek immediately began the process of creating a profile for herself in the financial community and bringing in new business.

76.     At first, Rubio recognized and lauded Klosek for her accomplishments. However, shortly after Klosek joined the St. Helena's branch, she became aware that the unethical practices she had witnessed at the Sonoma branch were even more prevalent at the St. Helena branch.

77.     On or about September 4, 2009, Klosek was asked by Rubio to note Zavaleta as the referral source for a new investment and financial planning client for the purpose of getting a Daily Solution for that notation even though Zavaleta had not actually referred the client. Klosek refused to engage in this conduct believing it to be unfair and unethical.  In an email later that day, Klosek explained to Rubio the reasons she refused to engage in this activity, and stated that she believed that it was in violation of the Wells Fargo ethic codes.  Rubio never addressed Klosek's concerns and simply responded that the matter had been discussed and was complete.

78.     Thereafter, Rubio engaged in a pattern and practice of harassing and retaliation against Klosek.  Klosek is informed and believes that Rubio's change of behavior was a result of Klosek's refusal to participate in unethical practices, Klosek's complaints over unlawful and unethical conduct of bankers, and Klosek's support of Guitron for similar complaints that Guitron made.

79.     In October 2009, Klosek was informed by other employees that Rubio was making statements to employees at Wells Fargo both at the St. Helena branch and to those outside the branch, that Klosek was untrustworthy and developing bad relationships with her coworkers.

80.     Subsequently, in or around mid-October 2009, Rubio asked Klosek to meet with her in the vault at St. Helena.  At this meeting, Rubio accused Klosek of playing a role in the complaints lodged by Guitron against Zavaleta.  Rubio threatened Klosek that if she participated in any way with complaints against Zavaleta, Rubio would make working at the St. Helena branch difficult for Klosek.  Klosek stated that she believed Zavaleta was indeed engaging in unethical conduct and further stated that she believed Rubio was doing nothing to stop Zavaleta's behavior despite her knowledge of it.  Klosek left the meeting feeling threatened, harassed and retaliated against by Rubio.

81.     Repeatedly in October through December 2009, Klosek made complaints to Rubio about unlawful and unethical conduct of other bankers at the St. Helena branch in

obtaining Daily Solutions. Specifically, Klosek complained that Zavaleta and other bankers were improperly opening and closing accounts in a manner to increase their Daily Solutions and they were forcing accounts on customers without customers having the requisite knowledge to agree to the opening of an account. Klosek stated that she believed these actions were unethical and that as a result of Rubio's consent to this conduct, Klosek was personally losing business by continuing to provide Daily Solutions to unethical bankers and not to Klosek.

82. On information and belief, Rubio and Wells Fargo did nothing to investigate or remedy the practices that were the subject of Klosek's complaints. Instead, Wells Fargo managers engaged in a pattern and practice of harassing and retaliating against Klosek.

83. Starting in October 2009 and continuing through the present, Klosek is informed and believes that she was being retaliated against because of her lodging of complaints of unlawful activity and her refusal to participate in that activity. This retaliation includes, but is not limited to the following:

    a.    reducing and limiting Klosek's work activity could play at St. Helena by not referring her Daily Solutions;

    b.    being offered less new business and potential Daily Solutions than other bankers;

    c.    lack of support in obtaining Daily Solutions;

    d.    making disparaging statements about Klosek to customers and employees;

    e.    baseless criticism of Klosek's work performance when she was meeting expectations;

    f.    failing to properly review Klosek's work when required;

    g.    refusing to communicate with Klosek about matters relevant to her employment, such as her quarterly review and Daily Solutions needs;

    h.    not being given asset credit on accounts she opened;

    i.    mandating that Klosek get additional approval for time off wherein her similarly situated peers were not required to get; and

    j.    prohibiting Klosek from opening business accounts.

84. A specific example of the retaliation Klosek suffered occurred in December

2009.  When Klosek transferred to the St. Helena branch in the summer of 2009, Rubio informed her that she would not be held accountable for the full earnings requirement of her position because the transition would hinder her earning capabilities.  Rubio initially informed Klosek that during this transition time, Klosek will satisfy the Daily Solutions requirement if she brought in 2 Daily Solutions per day.  However, in December 2009, Rubio gave Klosek a performance review where she held her accountable for the full earnings requirement of 5.5 Daily Solutions beginning with her move to St. Helena.  Rubio then gave Klosek a verbal warning for failing to meet her minimum requirements despite their previous agreement.

85.    In a December 24, 2009, meeting, Rubio accused Klosek for her handling of opening accounts for two brothers incorrectly.  Klosek protested and explained to Rubio the circumstances of opening the accounts and demonstrated that she did not engage in any deliberate attempt to violate banking practices.  Although Klosek believed she had justified her actions, after the meeting Klosek took additional steps to ensure that she opened a correct and appropriate accounts.  When she received verification that she had acted properly, she sent the follow up confirmation to Rubio.

86.    Nevertheless, in January 2010, Klosek was subjected to an investigation into an alleged improper account handling.  In or around mid-January 2010, Klosek was interviewed by a Human Resources consultant, Jodi Takahashi on that issue.  Ms. Takahashi informed Klosek that Wells Fargo was investigating Klosek for fraudulent activities.  In her meeting with Ms. Takahashi, Klosek learned that someone had made a complaint that Klosek had mixed up the identification of two brothers who were opening accounts with Wells Fargo.  Klosek explained that the mix up had been an inadvertent error that was corrected.  Ms. Takahashi stated that the complaint was a minimal one and that because Klosek had no further information to offer she would close the investigation.

87.    Klosek was never made aware that any of her complaints or the complaints made by Guitron for unlawful banking practices were ever investigated nor was she ever requested to give an account of the basis of her complaint to any investigator.

### 2.    Klosek was Subjected to Discrimination and Harassment Based on Her Age and National Origin

88.    In addition to being retaliated against for making complaints as set forth above, Klosek is informed and believes that Rubio's and Wells Fargo's conduct against her was based

1   on her age and race.  Klosek is a female, Caucasian employee over the age of 40 who was the
2   minority in her branch.

3       89.    Klosek was subjected to disparate treatment from Rubio and other Wells Fargo
4   employees as a result of her status as a Caucasian employee and/or her status as an employee
5   over the age of 40.  Beginning with her transfer to St. Helena and continuing through the
6   present, Klosek was treated differently than the other bankers at St. Helena.  This treatment by
    Rubio included, but was not limited to, the following:

7           a.    telling Klosek she was too old to be in the banking industry;

8           b.    giving younger bankers more support in obtaining new clients than
9   Klosek;

10          c.    refusing to transfer potential new business to Klosek wherein younger
11  and non-Caucasian employees were referred that business;

12          d.    failing to support Klosek in obtaining Daily Solutions while younger and
    non-Caucasian employees got that support;
13
14          e.    not inviting Klosek to public events to garner leads, where other bankers
    were regularly invited;
15
16          f.    criticizing Klosek's work performance when she was meeting
    expectations;

17          g.    refusing to allow Klosek to open certain types of accounts, such as
18  business accounts, when other similarly situated individuals were given the right to open these
19  accounts;

20          h.    failing to properly review Klosek's work when required;

21          i.    disparaging Klosek to customers and employees;

            j.    reducing and limiting the role Klosek could play at St. Helena;
22
23          k.    refusing to communicate with Klosek about matters relevant to her
    employment such as concerns about her quarterly reviews;

24          l.    being offered less new business and potential Daily Solutions then other
25  bankers by refusing to refer Klosek new customers when they came to the branch;

26          m.    not given asset credit on accounts she had opened where younger and
27  non-Caucasian employees received that credit; and

28          n.    being required to get permission from additional individuals than her

1    similarly situated peers would be required should she wish to take time off.

2      90.     A specific example of this harassment and discrimination occurred in early

3 January 2010 at the friends and family day event held at the St. Helena branch. As set forth

4 above, Rubio is in charge of distributing Daily Solutions and potential customers. Klosek is

5 informed and believes that Rubio refused to give Klosek any potential customers who were not

6 Caucasian. On this day, Klosek received less than half the amount of potential customer leads

than her similarly situated peers who were non-Caucasian as a result of Rubio's intentions.

7      91.     Additionally, in or around March 2010, Rubio formally implemented a

8 mandatory policy that Hispanic customers could only be serviced by Hispanic bankers when

9 they came into the branch, unless they directly refused to work with Hispanic bankers. As the

10 majority of the customers at the St. Helena branch were Hispanic, this policy had a disparate

11 impact on Klosek.

12      92.     Furthermore, Rubio created and perpetuated an environment where employees'

13 physical appearance was used to elicit new business. As such, Rubio would often compliment

the younger staff on their looks and suggest that they use their looks to increase business.

14 Rubio would then give the younger bankers more referrals based on this policy. Klosek was

15 disparately impacted by this policy because of her age as she received fewer referrals.

16      93.     In or around the first two weeks in January 2010, Klosek was interviewed by a

17 Mr. Hurtado, a Human Resources Consultant for Wells Fargo. Mr. Hurtado informed Klosek

18 that the purpose of the meeting was to discuss the atmosphere at the St. Helena branch but that

19 it was not part of an investigation. In this meeting, Klosek informed Hurtado that she had

20 concerns about the following: (1) fraudulent banking practices at the St. Helena branch in

opening and closing accounts improperly; (2) management's refusal to investigate complaints

21 about these practices; (3) management's treatment of her based on her race; and (4) retaliation

22 against her for raising complaints about being mistreated because of her age and race and her

23 complaints about fraudulent activities, by limited her business and spreading false facts about

24 her. Klosek further expressed her concerns that she was being harassed and discriminated

25 against by Rubio. Subsequent to this meeting, on or about February 5, 2010, Klosek had a

26 meeting with Ms. Eagles-Williams were she formally lodged her complaints pertaining to

27 Rubio's treatment.

28      94.     By February 22, 2010, neither Mr. Hurtado nor Ms. Eagles-Williams had

responded to Klosek's complaints of discrimination and harassment. That day, however, she was called into a meeting with Rubio and Walker. During the meeting Rubio made numerous incorrect and unsupported statements about Klosek and was overall very combative in approaching Klosek. Furthermore, Rubio misquoted Klosek's previous statements and did not give Klosek an opportunity to correct those statements. Without giving Klosek a chance to respond to Rubio's statement, Walker placed Klosek on administrative leave for an undetermined length of time so that Rubio and Walker could "figure out what to do with Klosek."

95.     On March 3, 2010, Klosek returned to work, and was informed by her clients that Wells Fargo had told them that she was not "returning" to Wells Fargo, indicating that Wells Fargo either intended to fire Klosek or encourage Klosek to quit.

96.     On or about March 9, 2010, Klosek was informed that Wells Fargo would be investigating the complaints she had made in February 2010. The alleged investigation was a few interviews and phone calls conducted by Deborah Cook, a human resources representative from Orange County, California. Despite the limited nature of the investigation, Klosek did not hear any results of the investigation until May 2010. In May 2010, after a her cursory investigation, Ms. Cook determined that no policies had been violated, but that "appropriate action" would be taken to ensure the management at the St. Helena branch was more cohesive. To date, Klosek is informed and believes no "action" has been taken to alter the management at St. Helena.

97.     From the time she returned from administrative leave until May 15, 2010, Klosek suffered continual harassment and adverse employment actions as a result of her age, race and involvement and/or perceived involvement with complaints pertaining to the fraudulent banking activities occurring at the St. Helena branch.

98.     Klosek suffered harassment on daily basis from Rubio as she was subjected to daily unwarranted criticisms and performance critiques, a constant lack of support in job performance and made decisions to exclude Klosek from succeeding at St. Helena.

99.     The stress of the harassment, discrimination and retaliation suffered by Klosek caused her to go to the emergency room with chest pains on May 14, 2010. To deal with her illness, Klosek took a medical leave of absence from May 14, 2010 to the present.

100.     Klosek is informed and believes that the actions of Rubio Wells Fargo as set

forth herein are harassment and discrimination based on Klosek's age and race. Klosek is further informed and believes that these actions are retaliation for her complaints and part of a consistent effort by Rubio to create a negative work performance record for Klosek so she may terminate her. At all times the conduct of Rubio and other individuals at the St. Helena branch towards Klosek was known to Walker and other senior managers at Wells Fargo.

101.    Klosek further contends that Wells Fargo (a) failed to properly train all supervisory employees, including Rubio, regarding discrimination and harassment in the workplace; (b) failed to enforce discrimination and harassment procedures; (c) failed to prevent the discriminating and harassment against Guitron by Rubio and other employees at the St. Helena branch; and (e) failed to ensure compliance with anti-discrimination and anti-harassment laws.

102.    As a result of the treatment, suspension and retaliation by Rubio, Walker and other Wells Fargo management, Klosek, suffered extreme stress, anxiety and depression.

103.    In response to Defendants' conduct, on or about April 29, 2010, Klosek filed a Complaint of Discrimination, Harassment and Retaliation against Wells Fargo with the EEOC. On or about May 6, 2010, in response to Klosek request, the EEOC issued a Notice Of Right To Sue to Klosek that was received by Klosek on or about May 8, 2010. True and correct copies of the above Complaint and Notice are attached hereto as Exhibit "C".

104.    Additionally, Klosek filed Complaints of Discrimination, Harassment and Retaliation against Defendants with the DFEH on or about April 23, 2010. In response to Klosek's request, on or about April 23, 2010, the DFEH issued a Notice Of Right To Sue, which Klosek received on that same day. True and correct copies of above Complaints and Notices are attached hereto as Exhibit "D".

### FIRST CAUSE OF ACTION
### Wrongful Discharge in Violation of Public Policy
### (Asserted by Guitron Against Wells Fargo)

105.    The allegations of paragraphs 1-104 are re-alleged and incorporated herein by reference.

106.    An employer commits tortious termination in violation of public policy when there is an applicable public policy protecting an employee with a certain status and the

1  employer terminates the employee because of his or her protected status. *Tameny v. Atlantic*
2  *Richfield Co.* (1980) 27 Cal.3d 167. A duty is implied by law on the part of the employer to
3  conduct its affairs in compliance with public policy, expressed judicially or by statute.

4  107. The public policy expressed in Title VII and the California Fair Employment
   and Housing Act, codified in Gov't Code §12900 *et seq.* ("FEHA") protects employees from
5  discrimination and retaliation based upon race, gender, age and for making claims for wages.
6  The facts set forth above demonstrate that Wells Fargo terminated Guitron and took other
7  adverse employment actions against her because she complained about unethical banking
8  practices and because she was a single woman and mother in violation of well-established
9  public policy.

10  108. Wells Fargo's actions, as described above, directly and proximately have
11  caused, and continue to cause, Guitron to suffer losses of income and professional
   opportunities and have caused severe emotional distress, anguish, pain and suffering,
12  humiliation, indignity, personal embarrassment, and damage to her professional reputation.
13
    109. As such, Guitron is entitled to damages according to proof at trial.
14
    110. In doing the acts herein alleged, Wells Fargo acted with oppression, fraud,
15  malice, and in conscious disregard of Guitron's rights and Guitron is therefore entitled to
16  punitive damages in an amount according to proof at the time of trial.

17
18                          **SECOND CAUSE OF ACTION**
                       **Discrimination in Violation of Title VII**
19
                                  **COUNT ONE**
20                    **(Asserted by Guitron Against Wells Fargo)**

21  111. The allegations of paragraphs 1-104 are re-alleged and incorporated herein by
22  reference.

23  112. Title VII prohibits sexual discrimination on the basis of gender and marital
   status, such that all individuals are entitled to the enjoyment of all benefits, privileges, terms
24  and conditions of employment.
25
    113. As set forth above, throughout the course of her employment at Wells Fargo,
26  Guitron was treated less favorably than her male and non-single parent/female colleagues.
27  This differential treatment included, but was not limited to, setting additional requirements for
28  Guitron, subjecting Guitron to torment and harassment about her private life, giving Guitron

1    poor performance reviews based on her familial obligations and discriminating against Guitron

2    for having to care for her children.

3        114.   Rubio acted in the interest of Wells Fargo and aided and abetted the unequal

4    treatment of Plaintiff on the basis of her gender and marital status in violation of Title VII.

5        115.   Wells Fargo's actions, as described above, directly and proximately have

6    caused, and continue to cause, Guitron to suffer losses of income and professional

     opportunities and have caused severe emotional distress, anguish, pain and suffering,

7    humiliation, indignity, personal embarrassment, and damage to her professional reputation.

8        116.   As such, Guitron is entitled to damages according to proof at trial.

9        117.   In doing the acts herein alleged, Wells Fargo acted with oppression, fraud,

10   malice, and in conscious disregard of Guitron's rights and Guitron is therefore entitled to

11   punitive damages in an amount according to proof at the time of trial.

12                                    **COUNT TWO**
                            **(Asserted by Klosek Against Wells Fargo)**
13

14       118.   The allegations of paragraphs 1-104 are re-alleged and incorporated herein by

15   reference.

16       119.   Title VII prohibits discrimination on the basis of age, race and national origin,

17   such that all individuals are entitled to the enjoyment of all benefits, privileges, terms and

18   conditions of employment.

19       120.   As set forth above, throughout the course of her employment at Wells Fargo,

     Klosek was treated less favorably than her younger and non-Caucasian colleagues.   This
20
     differential treatment included, but was not limited to, refusing to provide Klosek with
21
     potential business opportunities, refusing to give Klosek support to obtain Daily Solutions, and
22
     placing Klosek on unwarranted administrative leave.

23       121.   Rubio acted in the interest of Wells Fargo and aided and abetted the unequal

24   treatment of Plaintiff on the basis of her gender and marital status in violation of Title VII.

25       122.   Wells Fargo's actions, as described above, directly and proximately have

26   caused, and continue to cause, Klosek to suffer losses of income and professional opportunities

     and have caused severe emotional distress, anguish, pain and suffering, humiliation, indignity,
27
     personal embarrassment, and damage to her professional reputation.

28

123.   As such, Klosek is entitled to damages according to proof at trial.

124.   In doing the acts herein alleged, Wells Fargo acted with oppression, fraud, malice, and in conscious disregard of Klosek's rights and Klosek is therefore entitled to punitive damages in an amount according to proof at the time of trial.

### THIRD CAUSE OF ACTION
### Retaliation in Violation of Title VII

### COUNT ONE
### (Asserted by Guitron Against Wells Fargo)

125.   The allegations of paragraphs 1-104 are re-alleged and incorporated herein by reference.

126.   In order to protect their interests and rights, Guitron reported what she reasonably believed to be improper and unlawful, discriminatory and harassing conduct of Rubio, Zavaleta, Park and other Wells Fargo employees as set forth above.

127.   Wells Fargo engaged in conduct that, taken as a whole, materially and adversely affected the terms and conditions of Guitron's employment, including retaliating against Guitron by giving Guitron negative employee performance evaluations, creating a hostile work environment for Guitron, and by terminating Guitron.  Wells Fargo intentionally created or knowingly permitted intolerable working conditions to exist.

128.   These retaliatory actions constitute an unlawful act of employment discrimination in derogation of Guitron's rights under 42 U.S.C. §§2000e *et seq.*, for which Guitron is entitled to relief.

129.   Wells Fargo's actions, as described above, directly and proximately have caused, and continue to cause, Guitron to suffer losses of income and professional opportunities and have caused severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to her professional reputation.

130.   As such, Guitron is entitled to damages according to proof at trial.

131.   In doing the acts herein alleged, Wells Fargo acted with oppression, fraud, malice, and in conscious disregard of Guitron's rights and Guitron is therefore entitled to punitive damages in an amount according to proof at the time of trial.

**COUNT TWO**
**(Asserted by Klosek Against Wells Fargo)**

132.   The allegations of paragraphs 1-104 are re-alleged and incorporated herein by reference.

133.   In order to protect her interests and rights, Klosek reported what she reasonably believed to be improper and unlawful, discriminatory and harassing conduct of Rubio, Zavaleta, Park and other Wells Fargo employees as set forth above.

134.   Wells Fargo engaged in conduct that, taken as a whole, materially and adversely affected the terms and conditions of Klosek's employment, including retaliating against Klosek by giving Klosek negative employee performance evaluations, creating a hostile work environment for Klosek and by placing Klosek on unwarranted administrative leave.   Wells Fargo intentionally created or knowingly permitted intolerable working conditions to exist.

135.   These retaliatory actions constitute an unlawful act of employment discrimination in derogation of Klosek's rights under 42 U.S.C. §§2000e *et seq.*, for which Klosek is entitled to relief.

136.   Wells Fargo's actions, as described above, directly and proximately have caused, and continue to cause, Klosek to suffer losses of income and professional opportunities and have caused severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to her professional reputation.

137.   As such, Klosek is entitled to damages according to proof at trial.

138.   In doing the acts herein alleged, Wells Fargo acted with oppression, fraud, malice, and in conscious disregard of Klosek's rights and Klosek is therefore entitled to punitive damages in an amount according to proof at the time of trial.

**FOURTH CAUSE OF ACTION**
**Failure to Prevent Discriminatory Practices in Violation of Title VII**

**COUNT ONE**
**(Asserted by Guitron against Wells Fargo)**

139.   The allegations of paragraphs 1-104 are re-alleged and incorporated herein by reference.

140. Pursuant to Title VII, the "aiding and abetting" of discriminatory practices is forbidden. Thus, Wells Fargo was obliged to take all reasonable steps necessary to prevent discrimination against Guitron.

141. On numerous occasions, Guitron complained to various personnel at Human Resources, including Mr. Morgan, Ms. Brandenburg, Ms. Eagles-Williams and others, about the discriminatory treatment she suffered from Rubio and other Wells Fargo employees based on her protected status.

142. Upon information and belief, Wells Fargo did not make a complete investigation into Guitron's complaints of discrimination, nor did Wells Fargo implement effective discrimination and reporting procedures, or inform employees of what the company's discrimination reporting procedures were, if any. Finally, Wells Fargo made no attempts to remedy or stop discrimination when they were aware it was occurring.

143. Wells Fargo's actions, as described above, directly and proximately have caused, and continue to cause, Guitron to suffer losses of income and professional opportunities and have caused severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to her professional reputation.

144. As such, Guitron is entitled to damages according to proof at trial.

145. In doing the acts herein alleged, Wells Fargo acted with oppression, fraud, malice, and in conscious disregard of Guitron's rights and Guitron is therefore entitled to punitive damages in an amount according to proof at the time of trial.

### COUNT TWO
### (Klosek Against Wells Fargo)

146. The allegations of paragraphs 1-104 are re-alleged and incorporated herein by reference.

147. Pursuant to Title VII, the "aiding and abetting" of discriminatory practices is forbidden. Thus, Wells Fargo was obliged to take all reasonable steps necessary to prevent discrimination against Klosek.

148. On numerous occasions, Guitron complained to various personnel at Human Resources, including Ms. Brandenburg, Ms. Eagles-Williams and others, about the discriminatory treatment she suffered from Rubio and Walker based on her protected status.

149. Upon information and belief, Wells Fargo did not make a complete investigation into Klosek's complaints of discrimination, nor did Wells Fargo implement effective discrimination and reporting procedures, or inform employees of what the company's discrimination reporting procedures were, if any. Finally, Wells Fargo made no attempts to remedy or stop discrimination when they were aware it was occurring.

150. Wells Fargo's actions, as described above, directly and proximately have caused, and continue to cause, Klosek to suffer losses of income and professional opportunities and have caused severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to her professional reputation.

151. As such, Klosek is entitled to damages according to proof at trial.

152. In doing the acts herein alleged, Wells Fargo acted with oppression, fraud, malice, and in conscious disregard of Klosek's rights and Klosek is therefore entitled to punitive damages in an amount according to proof at the time of trial.

## FIFTH CAUSE OF ACTION
### Discrimination in Violation of Gov't Code §12945

### COUNT ONE
### (Asserted by Guitron Against Wells Fargo)

153. The allegations of paragraphs 1-104 are re-alleged and incorporated herein by reference.

154. FEHA makes it unlawful for an employer to discriminate against an employee on the basis of sex, gender and marital status.

155. As set forth above, throughout the course of her employment at Wells Fargo, Guitron was treated less favorably than her male and non-single parent/ female colleagues. This differential treatment included, but was not limited to, setting additional requirements for Guitron, subjecting Guitron to torment and harassment about her private life, giving Guitron poor performance reviews based on her familial obligations and discriminating against Guitron for having to care for her children in violation of Gov't Code §12945.

156. Wells Fargo's actions, as described above, directly and proximately have caused, and continue to cause, Guitron to suffer losses of income and professional

opportunities and have caused severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to her professional reputation.

157.    As such, Guitron is entitled to damages according to proof at trial.

158.    In doing the acts herein alleged, Wells Fargo acted with oppression, fraud, malice, and in conscious disregard of Guitron's rights and Guitron is therefore entitled to punitive damages in an amount according to proof at the time of trial.

### COUNT TWO
### (Asserted by Klosek Against Wells Fargo)

159.    The allegations of paragraphs 1-104 are re-alleged and incorporated herein by reference.

160.    FEHA makes it unlawful for an employer to discriminate against an employee on the basis of age, race and national origin.

161.    As set forth above, throughout the course of her employment at Wells Fargo, Klosek was treated less favorably than her younger and/or non-Caucasian colleagues. This differential treatment included, but was not limited to, Klosek being treated less favorably than her younger and non-Caucasian colleagues. This differential treatment included, but was not limited to, refusing to provide Klosek with potential business opportunities, refusing to give Klosek support to obtain Daily Solutions, and placing Klosek on unwarranted administrative leave in violation of Gov't Code §12945.

162.    Wells Fargo's actions, as described above, directly and proximately have caused, and continue to cause, Klosek to suffer losses of income and professional opportunities and have caused severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to her professional reputation.

163.    As such, Klosek is entitled to damages according to proof at trial.

164.    In doing the acts herein alleged, Wells Fargo acted with oppression, fraud, malice, and in conscious disregard of Klosek's rights and Klosek is therefore entitled to punitive damages in an amount according to proof at the time of trial.

//
//
//

### SIXTH CAUSE OF ACTION
### Retaliation in Violation of Gov't Code §12940

### COUNT ONE
### (Asserted by Guitron Against Wells Fargo)

165. The allegations of paragraphs 1-104 are re-alleged and incorporated herein by reference.

166. In order to protect her interests and rights, Guitron reported what she reasonably believed to be improper and unlawful, discriminatory and harassing conduct of Rubio, Park, Zavaleta and other Wells Fargo employees as set forth above.

167. Wells Fargo engaged in conduct that, taken as a whole, materially and adversely affected the terms and conditions of Guitron's employment, including, but not limited to, retaliating against Guitron by giving Guitron negative employee performance evaluations, creating a hostile work environment for Guitron, and by terminating Guitron. Wells Fargo intentionally created or knowingly permitted intolerable working conditions to exist. Wells Fargo's retaliation was in violation of Gov't Code §12940(h).

168. Guitron's complaints about the unlawful business practices at Wells Fargo and the treatment by Park and Rubio against her was a motivating reason for Wells Fargo's adverse employment actions against Guitron.

169. Guitron was terminated in furtherance of this retaliation.

170. Wells Fargo's actions, as described above, directly and proximately have caused, and continue to cause, Guitron to suffer losses of income and professional opportunities and have caused severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to her professional reputation.

171. As such, Guitron is entitled to damages according to proof at trial.

172. In doing the acts herein alleged, Wells Fargo acted with oppression, fraud, malice, and in conscious disregard of Guitron's rights and Guitron is therefore entitled to punitive damages in an amount according to proof at the time of trial.

//
//
//

1

2

## COUNT TWO
### (Asserted by Klosek Against Wells Fargo)

3     173.    The allegations of paragraphs 1-104 are re-alleged and incorporated herein by

4   reference.

5     174.    In order to protect her interests and rights, Klosek reported what she reasonably

6   believed to be improper and unlawful, discriminatory and harassing conduct of Rubio, Zavaleta

7   and other Wells Fargo employees as set forth above.

8     175.    Wells Fargo engaged in conduct that, taken as a whole, materially and adversely

9   affected the terms and conditions of Klosek's employment, including, but not limited to,
retaliating against Klosek by giving Klosek negative employee performance evaluations,

10  creating a hostile work environment for Klosek and by placing Klosek on unwarranted

11  administrative leave.  Wells Fargo intentionally created or knowingly permitted intolerable

12  working conditions to exist.  Wells Fargo's retaliation was in violation of Gov't Code

13  §12940(h).

14    176.    Klosek's complaints about the unlawful business practices at Wells Fargo and

15  the treatment by Walker and Rubio against her were a motivating reason for Wells Fargo's
adverse employment actions against Klosek.

16
      177.    Klosek was placed on unwarranted administrative leave furtherance of this
17  retaliation.

18    178.    Wells Fargo's actions, as described above, directly and proximately have

19  caused, and continue to cause, Klosek to suffer losses of income and professional opportunities

20  and have caused severe emotional distress, anguish, pain and suffering, humiliation, indignity,

21  personal embarrassment, and damage to her professional reputation.

22    179.    As such, Klosek is entitled to damages according to proof at trial.

23    180.    In doing the acts herein alleged, Wells Fargo acted with oppression, fraud,
malice, and in conscious disregard of Klosek's rights and Klosek is therefore entitled to
24  punitive damages in an amount according to proof at the time of trial.

25

26  //

27  //

28  //

**SEVENTH CAUSE OF ACTION**
**Harassment in Violation of Gov't Code §12945**

**COUNT ONE**
**(Asserted by Guitron Against Rubio)**

181. The allegations of paragraphs 1-104 are re-alleged and incorporated herein by reference.

182. During the course of Guitron's employment, Rubio created and allowed the existence of a hostile work environment and harassed Guitron on the basis of her marital status and gender in violation of FEHA.

183. Rubio engaged in an ongoing pattern and practice of pervasive and unlawful gender harassment by subjecting Guitron to a hostile work environment because of her status as a single woman and mother, as set forth above.

184. The above-described unwelcome harassment was severe, pervasive and created an intimidating, oppressive, hostile and offensive work environment which interfered with Guitron's emotional and physical well-being and Guitron's ability to perform her job.

185. Wells Fargo at all times relevant hereto had actual and constructive knowledge of the conduct described herein.

186. Rubio's actions, as described above, directly and proximately have caused, and continue to cause, Guitron to suffer losses of income and professional opportunities and have caused severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to her professional reputation.

187. As such, Guitron is entitled to damages according to proof at trial.

188. In doing the acts herein alleged, Rubio acted with oppression, fraud, malice, and in conscious disregard of Guitron's rights and Guitron is therefore entitled to punitive damages in an amount according to proof at the time of trial.

**COUNT TWO**
**(Asserted by Klosek Against Rubio)**

189. The allegations of paragraphs 1-104 are re-alleged and incorporated herein by reference.

190. During the course of Klosek's employment, Rubio created and allowed the existence of a hostile work environment and harassed Klosek on the basis of her age and race in violation of FEHA.

191. Rubio engaged in an ongoing pattern and practice of pervasive and unlawful gender harassment by subjecting Klosek to a hostile work environment because of her status as a woman over 40 and of Caucasian decent as set forth above.

192. The above-described unwelcome harassment was severe, pervasive and created an intimidating, oppressive, hostile and offensive work environment which interfered with Klosek's emotional and physical well-being and Klosek's ability to perform her job.

193. Rubio at all times relevant hereto had actual and constructive knowledge of the conduct described herein.

194. Rubio's actions, as described above, directly and proximately have caused, and continue to cause, Klosek to suffer losses of income and professional opportunities and have caused severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to her professional reputation.

195. As such, Klosek is entitled to damages according to proof at trial.

196. In doing the acts herein alleged, Wells Fargo acted with oppression, fraud, malice, and in conscious disregard of Klosek's rights and Klosek is therefore entitled to punitive damages in an amount according to proof at the time of trial.

### EIGHTH CAUSE OF ACTION
**Failure to Prevent Discriminatory Practices in Violation of Gov't Code §12940**

### COUNT ONE
**(Asserted by Guitron Against Wells Fargo)**

197. The allegations of paragraphs 1-104 are re-alleged and incorporated herein by reference.

198. Pursuant to Gov't Code §12940 et seq., Wells Fargo has a duty to take all reasonable steps necessary to prevent discrimination and harassment from occurring in its places of employment.

199. As set forth herein, in violation of this duty, Wells Fargo failed, prior to occurrence of each of the acts of discrimination experienced by Guitron, to take all reasonable steps necessary to prevent those acts of discrimination against Plaintiffs from occurring.

200. Upon information and belief, Wells Fargo never initiated a proper investigation into Guitron's complaints of discrimination, nor did Wells Fargo implement effective discrimination and reporting procedures, or inform employees of what the company's discrimination reporting procedures were, if any.

201. Wells Fargo's actions, as described above, directly and proximately have caused, and continue to cause, Guitron to suffer losses of income and professional opportunities and have caused severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to her professional reputation.

202. As such, Guitron is entitled to damages according to proof at trial.

203. In doing the acts herein alleged, Wells Fargo acted with oppression, fraud, malice, and in conscious disregard of Guitron's rights and Guitron is therefore entitled to punitive damages in an amount according to proof at the time of trial.

### COUNT TWO
### (Asserted by Klosek Against Wells Fargo)

204. The allegations of paragraphs 1-104 are re-alleged and incorporated herein by reference.

205. Pursuant to Gov't Code §12940 *et seq.*, Wells Fargo has a duty to take all reasonable steps necessary to prevent discrimination and harassment from occurring in its places of employment.

206. As set forth herein, in violation of this duty, Wells Fargo failed, prior to occurrence of each of the acts of discrimination experienced by Klosek, to take all reasonable steps necessary to prevent those acts of discrimination against Klosek from occurring.

207. Upon information and belief, Wells Fargo never initiated a proper investigation into Klosek's complaints of discrimination, nor did Wells Fargo implement effective discrimination and reporting procedures, or inform employees of what the company's discrimination reporting procedures were, if any.

208. Klosek's actions, as described above, directly and proximately have caused, and continue to cause, Klosek to suffer losses of income and professional opportunities and have caused severe emotional distress, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to her professional reputation.

209. As such, Klosek is entitled to damages according to proof at trial.

210. In doing the acts herein alleged, Wells Fargo acted with oppression, fraud, malice, and in conscious disregard of Klosek's rights and Klosek is therefore entitled to punitive damages in an amount according to proof at the time of trial.

## PRAYER FOR RELIEF

Plaintiffs pray for relief, as follows:

1. Enter a judgment in Plaintiffs favor and against Defendants for discrimination, harassment and retaliation in violation of Title VII and Gov't Code;

2. Enter a judgment in Guitron's favor and against Wells Fargo for constructive termination;

3. Enter a judgment in Plaintiffs' favor and Wells Fargo for its failure to prevent discriminatory practices;

4. An award to Plaintiffs of compensatory damages in an amount to be proven at trial;

5. An award to Plaintiffs of general damages in an amount to be proven at trial;

6. An award to Plaintiffs of punitive damages in an amount to be proven at trial;

7. An award of reasonable attorneys' fees and costs; and

8. All other relief the court deems just and proper.

Dated: August 6, 2010                PERETZ & ASSOCIATES


By: (-) *Yosef Peretz*
    Yosef Peretz
    Attorneys for Plaintiffs YESENIA
    GUITRON and JUDI KLOSEK

Yosef Peretz (SBN 209288)
Emily A. Knoles (SBN 241671)
Michael D. Burstein (SBN 248516)
PERETZ & ASSOCIATES
22 Battery Street, Suite 202
San Francisco, CA 94111
Telephone: 415.732.3777
Facsimile: 415.372.3791

Attorneys for Plaintiffs
YESENIA GUITRON and JUDI KLOSEK

## UNITED STATES DISTRICT COURT

## FOR THE_NORTHERN DISTRICT OF CALIFORNIA

| YESENIA GUITRON and JUDI KLOSEK, | CASE NO. |
|---|---|
| Plaintiffs, | **DEMAND FOR A JURY TRIAL** |
| v. | |
| WELLS FARGO, N.A.; WELLS FARGO & CO.; PAM RUBIO; HALE WALKER; ISOOK PARK; and DOES 1-50, | |
| Defendants. | |

Plaintiffs YESENIA GUITRON and JUDI KLOSEK hereby request a trial by jury on each cause of action for which a trial by jury is proper.

Dated: August 6, 2010                    PERETZ & ASSOCIATES

By: (-) *Yosef Peretz*
Yosef Peretz
Attorneys for Plaintiffs YESENIA
GUITRON and JUDI KLOSEK

Exhibit A

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 550-2010-01590 |

| California Department Of Fair Employment & Housing | | and EEOC |
|---|---|---|
| *State or local Agency, if any* | | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Guitron, Yesenia | (415) 732-3777 | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| C/O Yosef Peretz, 22 Battery Street #202, San Francisco, CA 94111 | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| WELLS FARGO | 500 or More | (707)963-3607 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 1107 Main Street, Saint Helena, CA 94574 | | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☐ DISABILITY ☒ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest 02/12/2010 Latest

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

1) Retaliation for Filing Complaints
2) Marital Status
3) See Attached DFEH

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| June 23, 2010 Date | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Charging Party Signature By Yosef Peretz, Esq. | |

EEOC Form 161-B (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  **Yesenia Guitron**<br>**C/O Yosef Peretz**<br>**22 Battery Street 3202**<br>**San Francisco, CA 94111** | From:  **San Francisco District Office**<br>**350 The Embarcadero**<br>**Suite 500**<br>**San Francisco, CA 94105** |

☐  *On behalf of person(s) aggrieved whose identity is*
   *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 550-2010-01590 | Eric C. Darius,<br>Intake Supervisor | (415) 625-5670 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐   More than 180 days have passed since the filing of this charge.

☒   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒   The EEOC is terminating its processing of this charge.

☐   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for **any violations that occurred <u>more than 2 years (3 years)</u>** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____     07/06/2010
            Michael  Baldonado,                (Date Mailed)
            District Director

Enclosures(s)

cc:   **Kristina Brown**
      **AA/EEO Officer**
      **WELLS FARGO**
      **333 Market Street**
      **Mail Code A0119-187**
      **San Francisco, CA 94105**

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Exhibit B

# * * * EMPLOYMENT * * *

| COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT | DFEH # **E200910M5561-00** |
|---|---|
| | DFEH USE ONLY |

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

| YOUR NAME (Indicate Mr. or Ms.) | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|
| **GUITRON, YESENIA** | **(415)732-3777** |

ADDRESS
**C/O PERETZ & ASSOCIATES, 22 BATTERY STREET, SUITE 202**

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| **SAN FRANCISCO, CA 94111** | **SAN FRANCISCO** | **075** |

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| **WELLS FARGO, N.A.** | **(707)963-3607** |

| ADDRESS | |
|---|---|
| **1107 MAIN STREET** | DFEH USE ONLY |

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| **SAINT HELENA, CA 94574** | **NAPA** | **055** |

| NO. OF EMPLOYEES/MEMBERS (if known) | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year) | RESPONDENT CODE |
|---|---|---|
| **150+** | **02/12/2010** | **00** |

THE PARTICULARS ARE:

I allege that on about or before **02/12/2010** , the following conduct occurred:

| | | |
|---|---|---|
| _X_ termination | ____ denial of employment | ____ denial of family or medical leave |
| ____ laid off | ____ denial of promotion | ____ denial of pregnancy leave |
| ____ demotion | ____ denial of transfer | ____ denial of equal pay |
| _X_ harassment | ____ denial of accommodation | ____ denial of right to wear pants |
| ____ genetic characteristics testing | _X_ failure to prevent discrimination or retaliation | ____ denial of pregnancy accommodation |
| ____ constructive discharge (forced to quit) | _X_ retaliation | |
| ____ impermissible non-job-related inquiry | _X_ other (specify) Denial of Career and Compensation Opportunities | |

by   **WELLS FARGO, N.A.**

Name of Person                                                    Job Title (supervisor/manager/personnel director/etc.)

because of :

| | | |
|---|---|---|
| _X_ sex | ____ national origin/ancestry | ____ disability (physical or mental) | ____ retaliation for engaging in protected |
| ____ age | _X_ marital status | ____ medical condition (cancer or | activity or requesting a protected |
| ____ religion | ____ sexual orientation | generic characteristic | leave or accommodation |
| ____ race/color | ____ association | _X_ other (specify)  Retaliation for Filing Complaints | |

State of what you believe to be the reason(s) for discrimination

CLAIMANT WAS SUBJECTED TO ONGOING AND CONTINUOUS UNWELCOMED, UNPROFESSIONAL AND INSULTING COMMENTS RELATED TO HER STATUS AS A SINGLE WOMAN AND A SINGLE MOTHER. THIS INCLUDED, BUT WAS NOT LIMITED TO, THE FOLLOWING CONDUCT BY WELLS FARGO AND ITS EMPLOYEES, SPECIFICALLY ISOOK PARK AND PAM RUBIO: 1) REQUIREMENTS THAT CLAIMANT WEAR SHORT SKIRTS AND SHAKE HER SKIRT TO ATTRACT CUSTOMERS; 2) DEMAND THAT CLAIMANT WEAR SHORT DRESSES AND SHOW OFF HER LEGS AND GO WALK TO TOWN TO ATTRACT BUSINESS; 3) REQUESTING CLAIMANT TO CONVINCE HER "BOYFRIENDS AND ADMIRERS" TO OPEN BANK ACCOUNTS AS A SALE METHOD; 4) HARASSING CLAIMANT

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

By submitting this complaint I am declaring under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated  06/18/2010

At  Napa

DATE FILED:  06/18/2010

# * * * EMPLOYMENT * * *

| COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT | DFEH # | E200910M5561-00 |
| --- | --- | --- |
| | | DFEH USE ONLY |

**State of what you believe to be the reason(s) for discrimination**

CLAIMANT WAS SUBJECTED TO ONGOING AND CONTINUOUS UNWELCOMED, UNPROFESSIONAL AND INSULTING COMMENTS RELATED TO HER STATUS AS A SINGLE WOMAN AND A SINGLE MOTHER. THIS INCLUDED, BUT WAS NOT LIMITED TO, THE FOLLOWING CONDUCT BY WELLS FARGO AND ITS EMPLOYEES, SPECIFICALLY ISOOK PARK AND PAM RUBIO: 1) REQUIREMENTS THAT CLAIMANT WEAR SHORT SKIRTS AND SHAKE HER SKIRT TO ATTRACT CUSTOMERS; 2) DEMAND THAT CLAIMANT WEAR SHORT DRESSES AND SHOW OFF HER LEGS AND GO WALK TO TOWN TO ATTRACT BUSINESS; 3) REQUESTING CLAIMANT TO CONVINCE HER "BOYFRIENDS AND ADMIRERS" TO OPEN BANK ACCOUNTS AS A SALE METHOD; 4) HARASSING CLAIMANT ABOUT WHO SHE WAS DATING OR SEEING; 5) ACCUSING AND CONSULTING CLAIMANT FOR DRESSING TOO PROVOCATIVELY WHILE OTHER EMPLOYEES, INCLUDING MS. RUBIO DRESSED IN VIOLATION OF DRESS CODE; 6) REPEATEDLY ACCUSING CLAIMANT OF HAVING AN AFFAIR WITH COWORKERS; 7) SCOLDING CLAIMANT FOR BEING TARDY WHEN SHE WAS TAKING CARE OF HER CHILDREN; 8) HARASSING CLAIMANT ABOUT BEING ABSENT TO CARE FOR HER CHILDREN; 9) DENYING CLAIMANT PROTECTED FAMILY LEAVE; 10) GIVING CLAIMANT POOR PERFORMANCE REVIEWS AS A RESULT OF ISSUES RELATED TO BEING A SINGLE MOTHER; AND 11) REQUIRING CLAIMANT TO WORK AFTER HOURS IN DISREGARD AND IN SPRITE OF HER STATUS AS A SINGLE MONTH.

ADDITIONALLY, CLAIMANT CONTENDS THAT SHE WAS DENIED ACCOMMODATIONS AS A RESULT OF HER STATUS. CLAIMANT IS INFORMED AND BELIEVES THAT OTHER EMPLOYEES WHO WERE NOT SINGLE WOMEN AND/OR SINGLE MOTHERS WERE NOT SUBJECT TO THIS HARASSMENT, DISCRIMINATION AND REFUSAL TO ACCOMMODATE CLAIMANT.

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICE AGENCY

ARNOLD SCHWARZENEGGER, Governor

## DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
1515 CLAY STREET, SUITE 701, OAKLAND, CA 94612
(510) 622-2941
www.dfeh.ca.gov



June 18, 2010

GUITRON, YESENIA
C/O PERETZ & ASSOCIATES, 22 BATTERY STREET, SUITE
202
SAN FRANCISCO, CA 94111

RE:  E200910M5561-00
     GUITRON/WELLS FARGO, N.A.

Dear GUITRON, YESENIA:

## NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective June 18, 2010 because an immediate right-to-sue notice was requested. DFEH will take no further action on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act, whichever is earlier.

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

*Allan H. Pederson*

Allan Pederson
District Administrator

cc:   Case File

SUSAN WILLIAMS-EAGLES
HUMAN RESOURCES MANAGER
WELLS FARGO BANK, N.A.
2804 GATEWAY OAKS, #260
SACRAMENTO, CA 95833-3509

DFEH-200-43 (06/06)

# * * * EMPLOYMENT * * *

| COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT | DFEH #   **E200910M5561-02** |
|---|---|
| | DFEH USE ONLY |

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

| YOUR NAME (indicate Mr. or Ms.)<br>**GUITRON, YESENIA** | TELEPHONE NUMBER (INCLUDE AREA CODE)<br>**(415)732-3777** |
|---|---|

ADDRESS
**C/O PERETZ & ASSOCIATES, 22 BATTERY STREET, SUITE 202**

| CITY/STATE/ZIP<br>**SAN FRANCISCO,CA,94111** | COUNTY<br>**SAN FRANCISCO** | COUNTY CODE<br>**075** |
|---|---|---|

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

| NAME<br>**RUBIO, PAM** | TELEPHONE NUMBER (Include Area Code)<br>**(707)963-3607** |
|---|---|

| ADDRESS<br>**1107 MAIN STREET** | DFEH USE ONLY |
|---|---|

| CITY/STATE/ZIP<br>**SAINT HELENA, CA 94574** | COUNTY | COUNTY CODE |
|---|---|---|

| NO. OF EMPLOYEES/MEMBERS (if known)<br>**150+** | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year)<br>**02/12/2010** | RESPONDENT CODE<br>**02** |
|---|---|---|

THE PARTICULARS ARE:

I allege that on about or before **02/12/2010** , the following conduct occurred:

- _X_ termination
- ___ laid off
- ___ demotion
- _X_ harassment
- ___ genetic characteristics testing
- ___ constructive discharge (forced to quit)
- ___ impermissible non-job-related inquiry

- ___ denial of employment
- ___ denial of promotion
- ___ denial of transfer
- ___ denial of accommodation
- _X_ failure to prevent discrimination or retaliation
- _X_ retaliation
- _X_ other (specify) **Denial of Career and Compensation Opportunities**

- ___ denial of family or medical leave
- ___ denial of pregnancy leave
- ___ denieal of equal pay
- ___ denial of right to wear pants
- ___ denial of pregnancy accommodation

by   **RUBIO, PAM**
Name of Person

**MANAGER**
Job Title (supervisor/manager/personnel director/etc.)

because of :

- _X_ sex
- ___ age
- ___ religion
- ___ race/color

- ___ national origin/ancestry
- _X_ marital status
- ___ sexual orientation
- ___ association

- ___ disability (physical or mental)
- ___ medical condition (cancer or genetic chracteristic
- _X_ other (specify) **Retaliation for Filing Complaints**

- ___ retaliation for engaging in protected activity or requesting a protected leave or accommodation

State of what you believe to be the reason(s) for discrimination

CLAIMANT WAS SUBJECTED TO ONGOING AND CONTINUOUS UNWELCOMED, UNPROFESSIONAL AND INSULTING COMMENTS RELATED TO HER STATUS AS A SINGLE WOMAN AND A SINGLE MOTHER. THIS INCLUDED, BUT WAS NOT LIMITED TO, THE FOLLOWING CONDUCT BY WELLS FARGO AND ITS EMPLOYEES, SPECIFICALLY ISOOK PARK and PAM RUBIO: 1) REQUIREMENTS THAT CLAIMANT WEAR SHORT SKIRTS AND SHAKE HER SKIRT TO ATTRACT CUSTOMERS; 2) DEMAND THAT CLAIMANT WEAR SHORT DRESSES AND SHOW OFF HER LEGS AND GO WALK TO TOWN TO ATTRACT BUSINESS; 3) REQUESTING CLAIMANT TO CONVINCE HER "BOYFRIENDS AND ADMIRERS" TO OPEN BANK ACCOUNTS AS A SALE METHOD; 4) HARASSING CLAIMANT

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

By submitting this complaint I am declaring under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated  **06/18/2010**

At  **Napa**

DATE FILED:  **06/18/2010**

DFEH-300-03o (02/08)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

STATE OF CALIFORNIA

# * * * EMPLOYMENT * * *

**COMPLAINT OF DISCRIMINATION UNDER
THE PROVISIONS OF THE CALIFORNIA
FAIR EMPLOYMENT AND HOUSING ACT**

DFEH #    **E200910M5561-02**

DFEH USE ONLY

**State of what you
believe to be the
reason(s) for
discrimination**

CLAIMANT WAS SUBJECTED TO ONGOING AND CONTINUOUS UNWELCOMED, UNPROFESSIONAL AND INSULTING COMMENTS RELATED TO HER STATUS AS A SINGLE WOMAN AND A SINGLE MOTHER. THIS INCLUDED, BUT WAS NOT LIMITED TO, THE FOLLOWING CONDUCT BY WELLS FARGO AND ITS EMPLOYEES, SPECIFICALLY ISOOK PARK AND PAM RUBIO: 1) REQUIREMENTS THAT CLAIMANT WEAR SHORT SKIRTS AND SHAKE HER SKIRT TO ATTRACT CUSTOMERS; 2) DEMAND THAT CLAIMANT WEAR SHORT DRESSES AND SHOW OFF HER LEGS AND GO WALK TO TOWN TO ATTRACT BUSINESS; 3) REQUESTING CLAIMANT TO CONVINCE HER "BOYFRIENDS AND ADMIRERS" TO OPEN BANK ACCOUNTS AS A SALE METHOD; 4) HARASSING CLAIMANT ABOUT WHO SHE WAS DATING OR SEEING; 5) ACCUSING AND CONSULTING CLAIMANT FOR DRESSING TOO PROVOCATIVELY WHILE OTHER EMPLOYEES, INCLUDING MS. RUBIO DRESSED IN VIOLATION OF DRESS CODE; 6) REPEATEDLY ACCUSING CLAIMANT OF HAVING AN AFFAIR WITH COWORKERS; 7) SCOLDING CLAIMANT FOR BEING TARDY WHEN SHE WAS TAKING CARE OF HER CHILDREN; 8) HARASSING CLAIMANT ABOUT BEING ABSENT TO CARE FOR HER CHILDREN; 9) DENYING CLAIMANT PROTECTED FAMILY LEAVE; 10) GIVING CLAIMANT POOR PERFORMANCE REVIEWS AS A RESULT OF ISSUES RELATED TO BEING A SINGLE MOTHER; AND 11) REQUIRING CLAIMANT TO WORK AFTER HOURS IN DISREGARD AND IN SPRITE OF HER STATUS AS A SINGLE MONTH.

ADDITIONALLY, CLAIMANT CONTENDS THAT SHE WAS DENIED ACCOMMODATIONS AS A RESULT OF HER STATUS. CLAIMANT IS INFORMED AND BELIEVES THAT OTHER EMPLOYEES WHO WERE NOT SINGLE WOMEN AND/OR SINGLE MOTHERS WERE NOT SUBJECT TO THIS HARASSMENT, DISCRIMINATION AND REFUSAL TO ACCOMMODATE CLAIMANT.

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY                                          ARNOLD SCHWARZENEGGER, Governor

## DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

1515 CLAY STREET, SUITE 701, OAKLAND, CA 94612
(510) 622-2941
www.dfeh.ca.gov



June 18, 2010

GUITRON, YESENIA
C/O PERETZ & ASSOCIATES, 22 BATTERY STREET, SUITE
202
SAN FRANCISCO,CA,94111

RE:   E200910M5561-02
      GUITRON/RUBIO, PAM, AS AN INDIVIDUAL

Dear GUITRON, YESENIA:

## NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the Department
of Fair Employment and Housing (DFEH) has been closed effective June 18, 2010 because
an immediate right-to-sue notice was requested. DFEH will take no further action on the
complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965,
subdivision (b), a civil action may be brought under the provisions of the Fair Employment
and Housing Act against the person, employer, labor organization or employment agency
named in the above-referenced complaint. The civil action must be filed within one year
from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity
Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this
DFEH *Notice of Case Closure*  or within 300 days of the alleged discriminatory act,
whichever is earlier.

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

Allan H. Pederson

Allan Pederson
District Administrator

cc:   Case File

PAM RUBIO
MANAGER
WELLS FARGO
1107 MAIN STREET
SAINT HELENA, CA 94574

Exhibit C

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 550-2010-01250 |

| California Department Of Fair Employment & Housing | and EEOC |
|---|---|

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| Judi Klosek | (415) 732-3777 | 09-17-1944 |

| Street Address | City, State and ZIP Code |
|---|---|
| C/O Yosef Peretz, 22 Battery Street #202, San Francisco, CA 94111 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| WELLS FARGO | 500 or More | |

| Street Address | City, State and ZIP Code |
|---|---|
| Hr Director, 1107 Main Street, Saint Helena, CA 94574 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (*Check appropriate box(es).*)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN

☐ RETALIATION  ☒ AGE  ☒ DISABILITY  ☐ OTHER (*Specify below.*)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest          Latest

☐ CONTINUING ACTION

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)*):
See attached

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT |

Yosef Peretz, Esq. for
Judi Klosek

| 4/29/10 | | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
|---|---|---|
| Date | Charging Party Signature | |

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Judi Klosek<br>C/O Yosef Peretz<br>22 Battery Street #202<br>San Francisco, CA 94111 | From: | San Francisco District Office<br>350 The Embarcadero<br>Suite 500<br>San Francisco, CA 94105 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 550-2010-01250 | Adriana Gomez,<br>Investigator | (415) 625-5659 |

(See also the additional information enclosed with this form.)

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☒ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for **any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

Michael Baldonado,
District Director

5-6-10
(Date Mailed)

cc: WELLS FARGO
Hr Director
1107 Main Street
Saint Helena, CA 94574

Enclosure with EEOC
Form 161-B (11/09)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – not 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Exhibit D

# * * * EMPLOYMENT * * *

| COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT | DFEH # | E200910M5457-00 |
|---|---|---|
| | | DFEH USE ONLY |

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

| YOUR NAME (indicate Mr. or Ms.) | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|
| **KLOSEK, JUDI** | **(415)732-3777** |

| ADDRESS |
|---|
| **22 BATTERY STREET, SUITE 202** |

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| **SAN FRANCISCO, CA 94111** | **SAN FRANCISCO** | **075** |

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| **WELLS FARGO, N.A.** | **(707)963-3607** |

| ADDRESS | DFEH USE ONLY |
|---|---|
| **1107 MAIN STREET** | |

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| **SAINT HELENA, CA 94574** | **NAPA** | **055** |

| NO. OF EMPLOYEES/MEMBERS (if known) | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month,day, and year) | RESPONDENT CODE |
|---|---|---|
| | **04/23/2010** | **00** |

THE PARTICULARS ARE:

I allege that on about or before **04/23/2010** , the following conduct occurred:

| | | |
|---|---|---|
| ____ termination | ____ denial of employment | ____ denial of family or medical leave |
| ____ laid off | _X_ denial of promotion | ____ denial of pregnancy leave |
| ____ demotion | ____ denial of transfer | ____ denial of equal pay |
| _X_ harassment | ____ denial of accommodation | ____ denial of right to wear pants |
| ____ genetic characteristics testing | _X_ failure to prevent discrimination or retaliation | ____ denial of pregnancy accommodation |
| ____ constructive discharge (forced to quit) | _X_ retaliation | |
| ____ impermissible non-job-related inquiry | _X_ other (specify)  **Denial of career & comps. opportunities** | |

by **WELLS FARGO, N.A.**

| Name of Person | Job Title (supervisor/manager/personnel director/etc.) |
|---|---|

because of :

| | | | |
|---|---|---|---|
| ____ sex | _X_ national origin/ancestry | ____ disability (physical or mental) | _X_ retaliation for engaging in protected |
| _X_ age | ____ marital status | ____ medical condition (cancer or | activity or requesting a protected |
| ____ religion | ____ sexual orientation | generic chracteristic | leave or accommodation |
| ____ race/color | _X_ association | _X_ other (specify)  **Retaliation for making complaints** | |

State of what you believe to be the reason(s) for discrimination

MS. KLOSEK BELIEVES SHE WAS HARASSED, RETALIATED AND DISCRIMINATED AGAINST BECAUSE OF HER AGE AND BECAUSE OF HER NATIONAL ORIGIN. MS. KLOSEK IS A CAUCASIAN WOMEN FROM THE UNITED STATES WHO IS OVER THE AGE OF 40 IN A WORK ENVIRONMENT WHERE THE MAJORITY OF THE STAFF ARE WELL BELOW 40 YEARS OLD AND OF HISPANIC ORIGIN. MS. KLOSEK BELIEVES SHE WAS RETALIATED AND DISCRIMINATED AGAINST FOR PROTESTING UNLAWFUL AND UNETHICAL COMPANY POLICIES AND PRACTICES, FOR SUPPORTING AND BEING ASSOCIATED WITH OTHER EMPLOYEES THAT PROTESTED ON UNLAWFUL AND UNETHICAL PRACTICES, AND FOR COMPLYING WITH AN INVESTIGATION

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

By submitting this complaint I am declaring under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated **04/24/2010**

At **Napa**

DATE FILED: **04/24/2010**

DFEH-300-03o (02/08)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

STATE OF CALIFORNIA

# * * * EMPLOYMENT * * *

| COMPLAINT OF DISCRIMINATION UNDER | DFEH # | E200910M5457-00 |
|---|---|---|
| THE PROVISIONS OF THE CALIFORNIA | | |
| FAIR EMPLOYMENT AND HOUSING ACT | | DFEH USE ONLY |

**State of what you believe to be the reason(s) for discrimination**

MS. KLOSEK BELIEVES SHE WAS HARASSED, RETALIATED AND DISCRIMINATED AGAINST BECAUSE OF HER AGE AND BECAUSE OF HER NATIONAL ORIGIN. MS. KLOSEK IS A CAUCASIAN WOMEN FROM THE UNITED STATES WHO IS OVER THE AGE OF 40 IN A WORK ENVIRONMENT WHERE THE MAJORITY OF THE STAFF ARE WELL BELOW 40 YEARS OLD AND OF HISPANIC ORIGIN. MS. KLOSEK BELIEVES SHE WAS RETALIATED AND DISCRIMINATED AGAINST FOR PROTESTING UNLAWFUL AND UNETHICAL COMPANY POLICIES AND PRACTICES, FOR SUPPORTING AND BEING ASSOCIATED WITH OTHER EMPLOYEES THAT PROTESTED ON UNLAWFUL AND UNETHICAL PRACTICES, AND FOR COMPLYING WITH AN INVESTIGATION INTO THOSE POLICIES AND PRACTICES.

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY                                    ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 CLAY STREET, SUITE 701, OAKLAND, CA 94612
(510) 622-2941
www.dfeh.ca.gov



April 24, 2010

KLOSEK, JUDI
22 BATTERY STREET, SUITE 202
SAN FRANCISCO, CA 94111

RE:  E200910M5457-00
     KLOSEK/WELLS FARGO, N.A.

Dear KLOSEK, JUDI:

## NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective April 24, 2010 because an immediate right-to-sue notice was requested. DFEH will take no further action on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act, whichever is earlier.

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

Allan H. Pederson

Allan Pederson
District Administrator

cc:  Case File

SUSAN EAGLE-WILLIAMS
HUMAN RESOURCES MANAGER
WELLS FARGO, N.A.
2804 GATEWAY OAKS
SACRAMENTO, CA 95833

DFEH-200-43 (06/06)

# * * * EMPLOYMENT * * *

| COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT | DFEH # | E200910M5457-01 |
|---|---|---|
| | | DFEH USE ONLY |

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

| YOUR NAME (indicate Mr. or Ms.) | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|
| **KLOSEK, JUDI** | **(415)732-3777** |

ADDRESS

**22 BATTERY STREET, SUITE 202**

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| **SAN FRANCISCO,CA,94111** | **SAN FRANCISCO** | **075** |

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| **RUBIO, PAM** | **(707)963-3607** |

| ADDRESS | DFEH USE ONLY |
|---|---|
| **1107 MAIN STREET** | |

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| **SAINT HELENA, CA 94574** | | |

| NO. OF EMPLOYEES/MEMBERS (if known) | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year) | RESPONDENT CODE | |
|---|---|---|---|
| | **04/23/2010** | **01** | |

THE PARTICULARS ARE:

I allege that on about or before **04/23/2010** , the following conduct occurred:

| | | |
|---|---|---|
| ____ termination | ____ denial of employment | ____ denial of family or medical leave |
| ____ laid off | _X_ denial of promotion | ____ denial of pregnancy leave |
| ____ demotion | ____ denial of transfer | ____ denial of equal pay |
| _X_ harassment | ____ denial of accommodation | ____ denial of right to wear pants |
| ____ genetic characteristics testing | _X_ failure to prevent discrimination or retaliation | ____ denial of pregnancy accommodation |
| ____ constructive discharge (forced to quit) | _X_ retaliation | |
| ____ impermissible non-job-related inquiry | _X_ other (specify) __Denial of career & comps. opportunities__ | |

by **RUBIO, PAM**

Name of Person

**BRANCH MANAGER**

Job Title (supervisor/manager/personnel director/etc.)

because of :

| | | |
|---|---|---|
| ____ sex | _X_ national origin/ancestry | ____ disability (physical or mental) | _X_ retaliation for engaging in protected |
| _X_ age | ____ marital status | ____ medical condition (cancer or | activity or requesting a protected |
| ____ religion | ____ sexual orientation | generic chracteristic | leave or accommodation |
| ____ race/color | _X_ association | _X_ other (specify) __Retaliation for making complaints__ | |

State of what you believe to be the reason(s) for discrimination

MS. KLOSEK BELIEVES SHE WAS HARASSED, RETALIATED AND DISCRIMINATED AGAINST BECAUSE OF HER AGE AND BECAUSE OF HER NATIONAL ORIGIN. MS. KLOSEK IS A CAUCASIAN WOMEN FROM THE UNITED STATES WHO IS OVER THE AGE OF 40 IN A WORK ENVIRONMENT WHERE THE MAJORITY OF THE STAFF ARE WELL BELOW 40 YEARS OLD AND OF HISPANIC ORIGIN. MS. KLOSEK BELIEVES SHE WAS RETALIATED AND DISCRIMINATED AGAINST FOR PROTESTING UNLAWFUL AND UNETHICAL COMPANY POLICIES AND PRACTICES, FOR SUPPORTING AND BEING ASSOCIATED WITH OTHER EMPLOYEES THAT PROTESTED ON UNLAWFUL AND UNETHICAL PRACTICES, AND FOR COMPLYING WITH AN INVESTIGATION

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

By submitting this complaint I am declaring under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated **04/24/2010**

At **Napa**

DATE FILED: **04/24/2010**

**\* \* \* EMPLOYMENT \* \* \***

| COMPLAINT OF DISCRIMINATION UNDER | DFEH # | E200910M5457-01 |
|---|---|---|
| THE PROVISIONS OF THE CALIFORNIA | | |
| FAIR EMPLOYMENT AND HOUSING ACT | | DFEH USE ONLY |

State of what you
believe to be the
reason(s) for
discrimination

MS. KLOSEK BELIEVES SHE WAS HARASSED, RETALIATED AND DISCRIMINATED AGAINST BECAUSE OF HER AGE AND BECAUSE OF HER NATIONAL ORIGIN. MS. KLOSEK IS A CAUCASIAN WOMEN FROM THE UNITED STATES WHO IS OVER THE AGE OF 40 IN A WORK ENVIRONMENT WHERE THE MAJORITY OF THE STAFF ARE WELL BELOW 40 YEARS OLD AND OF HISPANIC ORIGIN. MS. KLOSEK BELIEVES SHE WAS RETALIATED AND DISCRIMINATED AGAINST FOR PROTESTING UNLAWFUL AND UNETHICAL COMPANY POLICIES AND PRACTICES, FOR SUPPORTING AND BEING ASSOCIATED WITH OTHER EMPLOYEES THAT PROTESTED ON UNLAWFUL AND UNETHICAL PRACTICES, AND FOR COMPLYING WITH AN INVESTIGATION INTO THOSE POLICIES AND PRACTICES.

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY                                                                                    ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 CLAY STREET, SUITE 701, OAKLAND, CA 94612
(510) 622-2941
www.dfeh.ca.gov



April 24, 2010

KLOSEK, JUDI
22 BATTERY STREET, SUITE 202
SAN FRANCISCO,CA,94111

RE:  E200910M5457-01
     KLOSEK/RUBIO, PAM, AS AN INDIVIDUAL

Dear KLOSEK, JUDI:

## NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective April 24, 2010 because an immediate right-to-sue notice was requested. DFEH will take no further action on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act, whichever is earlier.

Case4:10-cv-03461-CW   Document1   Filed08/06/10   Page63 of 63

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

Allan H. Pederson

Allan Pederson
District Administrator

cc:   Case File

SUSAN EAGLE-WILLIAMS
HUMAN RESOURCES CONSULTANT
WELLS FARGO
3640 NORTHGATE BLVD.
SACRAMENTO, CA 95834

DFEH-200-43 (06/06)