Yosef Peretz (SBN 209288)
Emily A. Knoles (SBN 241671)
Michael D. Burstein (SBN 248516)
PERETZ & ASSOCIATES
22 Battery Street, Suite 202
San Francisco, CA 94111
Telephone: 415.732.3777
Facsimile: 415.372.3791

Attorneys for Plaintiffs
YESENIA GUITRON and JUDI KLOSEK

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YESENIA GUITRON; and JUDI KLOSEK,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.; WELLS FARGO & CO.; PAM RUBIO; and DOES 1-20,<br><br>Defendants. | CASE NO. CIV-10-03461 CW<br><br>**PLAINTIFFS' MOTION TO COMPEL DEPOSITIONS AND THE PRODUCTION OF DOCUMENTS AND REQUEST FOR MONETARY SANCTIONS**<br><br>[FRCP 26, 34, & 37]<br><br>Judge: Hon. Claudia Wilken |

## I. INTRODUCTION

In the present Motion to Compel, Plaintiffs YESENIA GUITRON ("Guitron") and JUDI KLOSEK ("Klosek") (collectively, "Plaintiffs") seek the Court's intervention regarding two discovery issues: 1) the unilateral decision of Defendants WELLS FARGO BANK, N.A and WELLS FARGO & CO. (collectively, "Defendants") to not produce for properly noticed depositions sixteen of their employees, and 2) Defendants' refusal to produce electronically stored information that was originally saved by Guitron in her work email folder and in her computer workstation. Both of these actions lack any legal foundation, and both are part of Defendants' deliberate and impermissible strategy of manufacturing reasons to delay discovery

or just ignore their discovery obligations. Plaintiffs therefore have no choice but ask for the Court to compel the production of the requested documents and the appearance of all deponents.

## II. PROCEDURAL HISTORY

### A. Time Is of the Essence

On February 23, 2011, Plaintiffs served on Defendants with a first set of deposition notices and a first set of written discovery, including Requests for Production, Set One ("RPDs"). [A true and correct copy of Plaintiff's Requests for Production, Set One, is attached as Exhibit A to the Declaration of Yosef Peretz in Support of Plaintiffs' Motion to Compel ("Peretz Decl.") ¶2.] After granting Defendants multiple extensions, the discovery responses and production of documents were due on April 25, 2011. [Peretz Decl. ¶3.] Similarly, after a prolonged meet and confer process, the parties have agreed to set dates for the depositions of sixteen of Defendants' employees during the May 24, 2011 through June 30, 2011 timeframe. [*Id*. at ¶4.] Nevertheless, to date, Plaintiffs have not received complete responses to their first set of written discovery and have not been able to depose a single witness.[1] [*Id*. at 5.] Considering that the close of discovery was set by the Court to August 5, 2011, Plaintiffs believe that immediate judicial intervention is necessary to ensure the timely execution of the present litigation.

### B. Defendants Delayed Scheduling Depositions and then Unilaterally Refused to Produce Their Witnesses for Deposition

After a series of exchanges on March 16, 2011, both parties agreed that each side will allow the other side to take two extra days of deposition. [A true and correct copy of the March 17, 2011, email summarizing the telephone conference is attached as Exhibit B to the Peretz Decl. ¶6.] Over the next week, Defendants repeatedly asserted priority in scheduling their depositions of Plaintiffs over Plaintiffs deposing Defendants' witnesses. [A true and correct copy of these email exchanges is attached as Exhibit C to Peretz Decl. ¶7.] Defendants went so far as to demand that Plaintiffs confirm the dates of Plaintiffs' depositions before they even

---

[1] At this time, Plaintiffs and Defendants counsel are in the process of meeting and conferring about additional discovery responses and documents that are due by Defendants. Plaintiffs are still attempting in good faith to resolve at least some of these issues without seeking judicial intervention. However, as set forth below, Defendants have failed to engage in a meaningful meet and confer effort in general and specifically with regard to certain electronically stored information. As such, Plaintiffs anticipate that judicial intervention will be also required with regard to some these outstanding issues.

"begin querying [Defendants'] witnesses for specific dates in late May and early June because any change in Ms. Klosek's dates could change the dates of the other depositions." [*Id*.] While Defendants offered no basis in law or fact for their perceived deposition priority, Plaintiffs agreed to Defendants' scheduling request in a spirit of comity and good faith. At no point throughout this entire negotiation did Plaintiffs grant Defendants any *right* to complete all of their depositions before Plaintiffs would begin deposing Defendant's witnesses.

Eventually, on April 26, 2011, the parties agreed to a full schedule of depositions, and all depositions had been properly noticed and calendared by May 2011.[2] [A true and correct copy of this April 26, 2011, email and a true and correct copy of all of the deposition notices are attached, respectively, as Exhibit D and E to Peretz Decl. ¶8.]

On May 12, 2011, Defendants deposed Guitron. [Peretz Decl. ¶9.] During this deposition, Plaintiffs and Defendants repeatedly disagreed as to the propriety of certain questions. [*Id*.] Rather than meeting and conferring about the issues that arose in Guitron's deposition and proceeding with the rest of discovery as scheduled, Defendants unilaterally halted the deposition process and claimed that "[T]he parties cannot properly go forward with Ms. Guitron's deposition tomorrow or any other depositions until we resolve this fundamental dispute." [A true and correct copy of this May 12, 2011, email is attached as Exhibit F to Peretz Decl. ¶10.] Plaintiffs responded by noting that "we could have continued with Ms. Guitron's deposition and engaged in meet and confer efforts or sought judicial assistance regarding any documents produced after the fact or with regard to any outstanding issues," and requesting confirmation from Defendants that they were canceling all previously scheduled depositions by May 16, 2011. [*Id*.]

On May 16, 2011, Defendants confirmed they were halting the discovery process and claimed to be "entitled to complete the fair depositions of both Plaintiffs before producing their witnesses for depositions, as the parties already have agreed." [A true and correct copy of this

---

[2] As part of the stipulation, Plaintiffs were permitted to take the deposition of 16 witnesses over 12 days. Plaintiffs specifically requested, and Defendant specifically agreed, to allow Plaintiffs to depose Pam Rubio on May 24, 2011; Corina Zaveleta on May 27, 2011; Mary Crisp on June 1, 2011; Hale Walker on June 7, 2011; Isook Park on June 9, 2011; Judy Bowman, John Alejo, and Jodi Jacques on June 14, 2011; Greg Morgan on June 16, 2011; Chris Jensen on June 17, 2011; Susan Eagles-Williams on June 22, 2011; Aurelio Hurtado, Jodi Takahashi, the Person Most Qualified at Defendants' Ethics' Hotline on June 24, 2011; Diana Brandenburg on June 28, 2011; and Debbie Cook on June 30, 2011. [Peretz Decl., Exhs. D and E.]

May 16, 2011, email is attached as Exhibit G to Peretz Decl. ¶11.] In a minor act of conciliation, Defendants offered to produce Plaintiffs' properly notice deponents, but only if Plaintiffs complied with their unilaterally imposed requirements that all depositions were rescheduled to later dates, and a discovery referee be present at all dispositions. [A true and correct copy of Defendants May 16, 2011, letter is attached as Exhibit H to Peretz Decl. ¶12.] Given the difficulty and time it took to schedule the depositions in the first place and Defendants' pattern seeking any reason to delay discovery, Plaintiffs rejected Defendants proposal as an unnecessary and expensive intervention that would only further add cost and delay to the discovery process. [*Id.*]

Plaintiffs therefore responded by informing Defendants that they are improperly holding hostage the discovery process, and that Plaintiffs would be forced to seek judicial intervention unless Defendants altered their position immediately. [A true and correct copy of this May 20, 2011, meet and confer letter is attached as Exhibit I to Peretz Decl. ¶13.] Plaintiffs have yet to hear a response from Defendants on this matter. [*Id.* at ¶_.]

### C. Defendants Have Refused to Adequately Respond to Plaintiffs' Request for the Production of Guitron's "Ethics" Folder

As set forth above, Plaintiffs served written discovery upon Defendants as early as on February 23, 2011. After requesting and receiving a series of extensions, Defendants were obligated to produce all responsive documents by April 25, 2011. [A true and correct copy of the April 7, 2011, email exchange is attached as Exhibit J to Peretz Decl. ¶14.] Prior to production, on April 22, 2011, Plaintiffs' counsel directed Defendants' attention to two sets of electronically stored information pertaining to Guitron's complaints of ethical violations by either her coworkers or her supervisors. [A true and correct copy of the April 22, 2011, email is attached as Exhibit K to Peretz Decl. ¶15.] Specifically, Plaintiffs informed Defendants that Guitron maintained a folder on her former workstation entitled "Ethics" and a similar folder also entitled "Ethics" on her work email account. Documents in these folders were either sent by Guitron to Defendants' Ethics' Hotline as part of complaints for unethical conduct she made against several coworkers and supervisor or they were related to these complaints for unethical conduct. [*Id.*]

Because the documents and files were directly responsive to, *inter alia*, Plaintiffs' Requests for Production Nos. 36, 66, 70, 73 and 84, Plaintiffs wanted to ensure that Defendants'

counsel were aware of these documents to guarantee their production.[3] [Peretz Decl. ¶17.] This was purely a courtesy as these requests inarguably required the production of the files at issue. For example, RPD No. 84 reads, "For the period of January 1, 2005 to the present, all documents, communications or electronically stored data relating to, reflecting or regarding complaints made to the Ethics Hotline by Guitron." [Peretz Decl., Exhs. A .] Along with a series of boiler-plate objections, Defendants responded to this request, as follows: "Following a reasonable inquiry and diligent search, Wells Fargo will produce any documents in its possession, custody or control that reflect a complaint by Plaintiff Guitron to Wells Fargo's Ethics Hotline." [A true and correct copy of Defendants' Responses to Platiniffs' RPDs is attached as Exhibit L to Peretz Decl.¶ 16.] However, Defendants did not produce the files within the two different electronic folders labeled "Ethics." [Peretz Decl. ¶18.]

On April 26, 2011, a day after their production was due, Defendants claimed to have not been able to locate either set of files. [A true and correct copy of the April 26, 2011, email is attached as Exhibit M to Peretz Decl. ¶19.] Defendants thus requested that Guitron "identify more specifically where on her computer she saved those documents (*e.g.* the file name and directory)," and provide specific file name and/or directory for her "Ethics" email folder. [*Id.*] Defendant further stated that the emails no longer exist if they were maintained on Defendants servers "because her e-mailbox was discontinued within thirty days of her employment ending pursuant to WFB's policies for non-licensed individuals." [*Id.*]

Plaintiffs responded by specifying that Guirton's "Ethics" folder was in the "My Documents" folder of her former workstation, and that the "Ethics" email folder was likely on Defendants' email server as she accessed the folder through Microsoft Outlook. [A true and correct copy of the April 26, 2011, email is attached as Exhibit N to Peretz Decl. ¶20.] Plaintiffs also expressed disbelief that Defendants would delete any, much less all, of Guitron's emails merely because they discontinued an email account.[4] [*Id.*] Plaintiffs thus asked Defendants to confirm by May 2, 2011, that two folders still exist. [*Id.*]

---

[3] The Court should note that many other of Plaintiffs' Requests for Production of Documents should have caused Defendants to produce the files presently at issue, but Plaintiffs are limiting the focus of this motion to the five mentioned requests for brevity.

[4] In general, deleting an email account does not mean deleting the emails created or sent to the account. While there are a multitude of different programs to manage an email server, it is virtually inconceivable that basic and obsolete email server software is being use by Defendants considering their size and industry. As such, the notion that Defendants rely on email server

Defendants never responded to this request. Rather, they simply *ignored* Plaintiffs' attempts to address this issue until Plaintiffs raised the issue again in a May 13, 2011, meet and confer letter. [A true and correct copy of Plaintiff's May 13, 2011, email to Defendants and Defendants' May 16, 2011, response is attached as Exhibit O to Peretz Decl. ¶21.] The only response to Plaintiffs' request for the electronically stored information was thus: "Defendants produced responsive documents subject to the objections they asserted to the relevant document requests." [Peretz Decl. Exh. O.] Upon review of the Defendants production, it is clear that neither category of documents have been produced at all. [Peretz Decl. ¶18.]

### III. LEGAL STANDARD FOR A MOTION TO COMPEL AND SANCTIONS

Federal Rules of Civil Procedure ("FRCP"), Rule 26(b)(1) defines the scope of discovery in civil actions of "any matter, not privileged, that is relevant to the claim or defense of any party…" and its is to be "liberally interpreted to permit wide-ranging discovery of information." FRCP 26(b)(1); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005). In compliment, Rule 26(d) provides that any party may use the diverse methods of discovery "in any sequence, and the fact that a party is conducting discovery, whether by deposition or otherwise, shall not operate to delay any other party's discover." FRCP 26(d); *Keller v. Edwards*, 206 F.R.D. 412, 415 (D. Md. 2002).

Pursuant to FRCP 37(a), a court may compel the deposition of a party upon a properly noticed motion where a party has demanded deposition priority and has refused to appear at properly noticed depositions until said party can complete their depositions. *Zamora v. D'Arrigo Bros. Co.*, 2006 U.S. Dist. LEXIS 21208 (N.D. Cal. Apr. 11, 2006) ("it is improper for plaintiffs to refuse to attend depositions until after plaintiffs' discovery is complete."). A court may likewise compel further responses from a party where a party has failed to respond to discovery requests or provided evasive and incomplete responses. C*onvertino v United States DOJ*, 565 F.Supp.2d 10 (2008, DC Dist Col); *See also* Commentary to the 1993 Amendments to the Federal Rules of Civil Procedure, Rule 1993 ("evasive or incomplete disclosures and responses to interrogatories and production requests are treated as failures to disclose or respond.").

---

software that treats the storage of emails conterminously with email accounts is only marginally less likely than Defendants having yet to adopt computer workstations and still be reliant on typewriters.

FRCP Rule 37(d) specifically contemplates that a failure to properly respond to a request for production or appear at a deposition shall "not be excused on the ground that the discovery sought is objectionable unless the party failing to act has a pending motion for a protective order as provided by Rule 26(c)." Should a party provide incomplete or evasive discovery responses or fail to produce a party whose deposition properly has been noticed, said party may be sanctioned under Rule 37(b)(2)(A)-(C).

## IV.  ARGUMENT

### A.  Defendants Witnesses May Not Refuse to Appear at Properly Noticed Depositions

FRCP do not permit one party to make unilateral decisions regarding the timing and sequence of depositions during the discovery phase of civil litigation, as Defendants have done here. Under FRCP 26(d)(2)(B), "discovery by one party does not require any other party to delay its discovery." The Notes of the Advisory Committee Federal Rules of Civil Procedure specifically observe that "one party's initiation of discovery should not wait upon the other's completion, unless delay is dictated by special considerations." Commentary to the 1970 Amendments to the Federal Rules of Civil Procedure, Rule 26; *See also Keller*, *supra*, 206 F.R.D. at 416 (adverse parties that have been served with a proper notice of deposition are not "entitled to refuse to be present for the deposition without an order from the court excusing them from attending.").

Here, Plaintiffs properly served and noticed all depositions at issue. [Peretz Decl. Exh. E.] After the first day of Guitron's deposition, Defendants unilaterally canceled all subsequent depositions, including the ones properly noticed by Plaintiffs, and claimed to be "entitled to complete the fair depositions of both Plaintiffs before producing their witnesses for depositions." [Peretz Decl. Exh. F.] However, Defendants are not so entitled by law or stipulation.

As such, Defendants' actions are merely adding delay and expense to the present litigation, and Plaintiffs must therefore the Court's intervention in ordering the appearance of all properly noticed deponents.

\\\

\\\

**B. Defendants Must Produce the "Ethics" Folders in Guitron's Email and on Her Work Computer**

**1. Defendants Are Simply Refusing to Produce these Documents**

Pursuant to FRCP 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Plaintiffs properly served Defendants with Request for Production that is inclusive of the "Ethics" folders in Guitron's email and workstation.[5] Specifically, the requests demanded the production of all documents, including all electronically stored information, related to complaints made by Guitron regarding ethical violations of her co-workers and supervisors. Because the content of these folders evidence the complaints made by Guitron and Defendants' responses to those complaint, and such complaints triggered Defendants' harassment and retaliation, the content of these folders are directly relevant to the present litigation. FRCP Rule 26(b)(1); *See Moon*, *supra*, 232 F.R.D. at 636 (Rule 26(b) is "liberally construed" with regards to relevance).

Defendants, however, refused to produce these files. In fact, Defendants have not have even made a showing that they searched for these files. Instead, Defendants attempted to place the burden onto Plaintiffs to identify the directory on her computer and on Defendants' servers where the files might exist. [Pertez Decl. Exh. M.] This was wholly improper as Defendants have an obligation to conduct a reasonable inquiry into the factual basis of their responses to Plaintiffs' discovery requests, and it is uncontroverted that the relevant documents are clearly within Defendants' control. *Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006). Nevertheless, to aid them in their search, Plaintiffs provided this information to the best of their ability, but Defendants still refused to produce these documents or even confirm that they exist, have been identified or have been searched for. [Peretz Decl. Exh. O.] Thus, Plaintiffs have no choice but to ask the Court to order the immediate production of these documents.

**2. Defendants Objections to Producing these Documents Have No Merit**

In response to the five requests for production at issue, Defendants offer the following boiler-plate objections: Plaintiffs' request are compound, vague and ambiguous; Plaintiffs'

---

[5] Specifically, the directly on point RPDs are Nos. 36, 66, 70, 73 and 84. While Defendants have offered boiler-plate objections in their formal responses to the document requests, these objections are either meritless or do not provide any basis for withholding these documents. S*ee* Separate Statement of Fact in Support of Plaintiffs' Motion to Compel.

request are overbroad and unduly burdensome; Plaintiffs' requests are not reasonably calculated to lead to the discovery of admissible evidence; Plaintiffs' requests do not describe the documents sought with reasonable particularity; and that Plaintiff's requests impinge upon the attorney-client privilege, work product doctrine, and third party privacy rights.  Boilerplate objections of the kind upon which Defendants rely are widely rejected by courts in response to a Rule 34 request for production of documents because Rule 33(b)(4) states: "If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts." Fed.R.Civ.P. 33(b)(4); *see e.g. Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co., Inc.*, 246 F.R.D. 522, 528 (S.D.W. Va. 2007).  As such, these objections are improper and should be considered waived.  *Hall v. Sullivan*, 231 F.R.D. 468, 474 (D.Md.2005) ("failure to [object with specificity] may constitute a waiver of grounds not properly raised, including privilege or work product immunity, unless the court excuses this failure for good cause shown.")

### a. Objection 1: Vague and Ambiguous

Defendants object on the grounds that Plaintiffs' requests are vague and ambiguous, particularly with regard to the definitions of the terms "relating to" and "you."  Defendants have refused to take the definitions provided by Plaintiffs in a plain and natural manner in favor of finding reasons to object as part of their gamesmanship in delaying discovery.  Further, Plaintiffs' definitions are narrowly tailored to provide Defendants an accurate description of the information sought by Plaintiffs, and these definitions were even supplemented by Plaintiffs' April 22, 2011, email which directed Defendants' attention onto these documents. Thus, Defendants have not met their burden to show such vagueness or ambiguity precludes production and these objections are without merit.  *Thomas v. Cate*, 715 F.Supp.2d 1012, 1030 (E.D. Cal. 2010) ("The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity by demonstrating that 'more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases.'"); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 195 (C.D. Cal. 2006) (an objection that is a "bald, boilerplate assertion that plaintiff's document requests are overly burdensome and harassing merely because they seek information 'relating to' a subject is without merit.")

\\\

\\\

### b. Objection 2: Overbroad and Unduly Burdensome

Defendants object on the grounds that Plaintiffs' requests are overbroad and unduly burdensome as phrased because it is not reasonably limited in scope to Plaintiffs' claims in this action. Whoever, any and all complaints made by Guitron that are related in any fashion to unethical practices, including gaming, at her worksite in the St. Helena branch of Defendants ("St. Helena") are directly related to Plaintiffs' claims in this action as Plaintiffs allege that Defendants retaliated because Guitron made the complaints at issue. Further, Defendants' knowledge of the complaints and Defendants' reactions thereto are directly at issue to establish punitive damages and intent. Because Plaintiffs' request for the two "Ethics" folders are inarguably limited in scope and not over burdensome, Defendants' objections are meritless. *See e.g. Groves v. State of Wash.*, 863 F.2d 886 (9th Cir. 1988); s*ee also Garber*, 234 F.R.D. at 195.

### c. Objection 3: Not Reasonably Calculated to Lead to the Discovery of Admissible Evidence

Defendants also object on the grounds that Plaintiffs' requests seek production of voluminous documents not relevant to Plaintiffs' claims and not reasonably calculated to lead to the discovery of admissible evidence. Defendants misapply the standard of relevance, which is that discovery is permissible so long as it "appears reasonably calculated to lead to the discovery of admissible evidence." FRCP Rule 26(b)(1); *See also Moon*, *supra*, 232 F.R.D. at 636. Further, relevancy in particular should be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1970). Here, each of the discovery requests seeks information that directly pertains to Plaintiffs' retaliation and harassment claims as the "Ethics" folders contain documents relevant to the complaints that caused Defendants to retaliate and harass Guitron. Furthermore, Defendants have not provided any meaningful explanation on how subject matter of the requests was irrelevant to the case at hand, and thus Defendants failed to meet their burden of explaining why discovery requests were objectionable. *Hill*, *supra*, 242 F.R.D. at 560-562 *citing McLeod, Alexander, Powel & Apffel, P.C. v. Quarles* (5th Cir. 1990) 894 F.2d 1482, 1485.

### d. Objection 4: Lack of Reasonable Particularity

Defendants additionally object on the grounds that Plaintiffs' requests do not describe the documents sought with reasonable particularity as FRCP 34(b)(1)(A) requires. This is not

the case as "reasonable particularity" speaks to the identification of documents, and this standard has been met when "a reasonable man would know what documents or things are called for." 4A J. Moore, *Federal Practice*, ¶34.07, at 34-57 & n. 18; *See e.g. Mercantile Metal & Ore Corp. v. American Gen. Supply Corp.*, 12 F.R.D. 345 (S.D.N.Y.1952) ("the blanket request… for all documents 'which may be material to the issues' is an improper designation."). Because the "Ethics" folders are clearly a specific category of documents that were created during Guitron's tenure at St. Helena, the documents are easily determinable and the request has sufficient particularity. *Mallinckrodt Chem. Works v. Goldman, Sachs & Co.*, 58 F.R.D. 348, 354 (S.D.N.Y. 1973).

### e.   Objection 6: Attorney-Client Privilege

Defendants also object on the grounds that, as phrased, the requests potentially seek documents protected from disclosure by the attorney-client privilege.  Given that Guitron created and maintained the files which Plaintiffs now seek, there is no logical basis for the objection of attorney-client privilege.  Nevertheless, even if it should apply, Plaintiffs have no interest in any documents protected by the attorney-client privilege, but merely require the production of a privilege log to document any documents withheld.  *Zander v. Craig Hosp.*, D.Colo.2010, 2010 WL 4025341 (blanket claims of privilege does not satisfy the burden of proof for withholding information).  However, although Plaintiffs made repeated requests for a privilege log, no privilege log has been produced to date.  [Peretz Decl. ¶22. ]   As such, Plaintiffs ask the Court to order the immediate production of a privilege log.  *Zander, supra*.

### f.   Objection 7: Work Product Doctrine

Defendants also object on the grounds that, as phrased, it potentially seeks documents protected from disclosure by the work product doctrine.  To the extent the documents were part of internal investigations and their outcome, this privilege is inapplicable because those documents would have been produced as part of Defendants' ordinary course of business. *Miller v. Pancucci* 141 FRD 292, 303 (CD Cal 1992) (police report prepared as matter of course after citizen complaint was not work product); *Garcia v. City of El Centro* 214 FRD 587, 593-595 (SD Cal 2003) (when a claims adjuster for a city's insurer interviewed police officers for the purposes of determining whether or not the insurer should pay the plaintiff's claims, the interviews were in the ordinary course of the insurer's business and therefore could not be attorney work product).

Defendants have produced documents evidencing that investigative steps must take place and reports must be made when complaints are made about fraudulent banking practices. [Documents marked WFB 003055-3059 that were produced by Defendants are attached as Exhibit P to the Peretz Decl. ¶23.] Therefore, any documents sought in this request are part of the regular business practices of Defendants and cannot be protected by the work product doctrine. To the extent that any other documents are protected by the work product doctrine, Plaintiffs merely require the production of a privilege log, which Defendants have yet to produce.

Finally, given that Guitron created and maintained the files which Plaintiffs now seek, there is no logical basis for the objection of attorney work product. Any work product would have been waived when Guitron was provided the documents. *First Pac. Networks v. Atlantic Mutual Ins. Co.,* 163 FRD 574, 582-583 (ND Cal 1995) (sharing alleged work product with potential adversary waives protection).

### g.     Objection 8: Privacy of Third Parties

Defendants also object on the grounds that Plaintiffs' requests purport to seek documents protected from disclosure by third parties' constitutional rights to privacy. Plaintiffs agree that customers' banking information needs to be redacted as do social security numbers and driver's license's numbers as such information is irrelevant to this action. However, Plaintiffs require the production of the customers' identifying information within the files in Guitron's "Ethics" folders as it is directly relevant to the veracity of the complaints of gaming.

In navigating the tension between a third-parties right to privacy and a party's right to discover, the Court is to examine the relevancy of the information required, and — if relevant — to "narrowly circumscribe" the scope of discovery to facilitate the fair resolution of the litigation. *Cook v. Yellow Freight Sys.*, 132 F.R.D. 548, 552 (E.D. Cal. 1990); *Denari v. Superior Court*, 215 Cal.App.3d 1488, 1501 (1989). Here, the customers' information in the "Ethics" folders speaks to the veracity of the complaints themselves, as well as provide a means of determining whether Defendants' own investigative measures are legitimate inquiries or merely shams designed to protect Defendants. These concerns are critical as they speak to intent, knowledge, and punitive damages in the present case.

Further, Defendants waived any relevancy based objection as they specifically asked Guitron repeatedly about the identity of the customers who complained to her in her deposition

of May 12, 2011. [A true and correct copy of the Deposition Transcript (Rough Draft) of Guitron 138:22-140:6; 141:4-142:23; 143:18-144:17 and 145:-7 is attached as Exhibit Q to Peretz Decl. ¶24.]  By asking Guitron about the identities of customers who complained and then refusing to provide said identities, Defendants not only betray the relevance of this information but also attempt to use the information allegedly protected under third-party privacy concerns as both a sword and a shield.  Specifically, Defendants demand that Guirton provide the identity of the customers who complained about gaming while contemporaneously refusing to provide Guitron the same information.  *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir.. 2010) ("Disclosing a privileged communication or raising a claim that requires disclosure of a protected communication results in waiver as to all other communications on the same subject."); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived."); *see also Weil v. Inv./Indicators, Research & Mgmt.*, 647 F.2d 18, 24 (9th Cir. 1981).  Defendants cannot have it both ways, and the customer identifying information in the "Ethics" folders is discoverable and must be produced in an unredacted form.

Finally, Defendants base this objection on *Harding Lawson Assoc. v. Superior Court*, 10 Cal.App.4th 7 (1992) and *Sanchez v. City of Sanla Ana*, 936 F.2d 1027 (9th Cir. 1990).  These cases are easily distinguishable as they are focused upon third party personnel files and the relevant information at issues was available through other sources.  Here, the "Ethics" folders are in no fashion "third party personnel files" and the information is not obtainable from any other source.  As such, this objection must be disregarded.

### C.   Monetary Sanctions Are Appropriate

FRCP 37(d) authorizes the Court to impose sanctions against a party who fails to attend a duly noticed deposition or to properly respond to a request for inspection properly submitted under FRCP 34.  *Lee v. Walters*, 172 F.R.D. 421, 425 (D. Or. 1996).  Here, Defendants have unilaterally ceased the discovery process, refused to produce their witnesses for deposition, refused to conduct a reasonable search for, much less produce, requested documents. Based on the foregoing, Plaintiffs seek monetary sanctions equal to $6,820, which is based upon the amount of time Plaintiffs' attorneys spend meeting and conferring as well as drafting the present motion and Plaintiffs' attorneys' rates of $425 an hour for 1.9 hours of Yosef Peretz's time,

$350 per hour for 2.6 hours of Emily Knoles's time, and $325 per hour for 15.7 hours of Michael Burstein's time. [Peretz Decl. ¶25.]

## V. RELIEF REQUESTED AND CONCLUSION

Based on the foregoing and the supporting documents filed with this motion, Plaintiffs hereby request that the Court order the following depositions to be taken on the specified date and times at 22 Battery Street, Suite 202, San Francisco, California 94111:

a. Pam Rubio on June 14, 2011, at 9:30 a.m.;
b. Corina Zaveleta on June 16, 2011, at 9:30 a.m.;
c. Mary Crisp on June 17, 2011, at 9:30 a.m.;
d. Hale Walker on June 21, 2011, at 9:30 a.m.;
e. Isook Park on June 22, 2011, at 9:30 a.m.;
f. Judy Bowman, on June 23, 2011, at 9:30 a.m.;
g. John Alejo on June 23, 2011, at 1:00 p.m.;
h. Jodi Jacques on June 23, 2011, at 3:30 p.m.;
i. Greg Morgan on June 28, 2011, at 9:30 a.m.;
j. Chris Jensen on June 29, 2011, at 9:30 a.m.;
k. Susan Eagles-Williams on June 30, 2011, at 9:30 a.m.;
l. Aurelio Hurtado on July 11, 2011, at 9:30 a.m.;
m. Jodi Takahashi on July 11, 2011, at 1:00 p.m.;
n. the Person Most Qualified at Defendants' Ethics' Hotline on July 11, 2011, at 3:30 p.m.;
o. Diana Brandenburg on July 12, 2011, at 9:30 a.m.; and
p. Debbie Cook on July 13, 2011, at 9:30 a.m.

Also based on the foregoing and the supporting documents filed with this motion, Plaintiffs hereby request that the Court order the "Ethics" folders from Guitron's workstation and from her email account to produced no later than 5 days after the issuance of an order on this motion. The documents so produced should be unredacted but for any information pertaining to Defendants' customers' banking information.

Should Defendants maintain that Guitron's "Ethics" email folder has been deleted, Plaintiff request that the Court order Defendants to produce an image of the email server that

1  stored the Guitron's "Ethics" email folder no later than 5 days after the issuance of an order on
2  this motion.

3
4  Dated: May 26, 2011                            PERETZ & ASSOCIATES
5
6                                                 By: <u>(-) *Yosef Peretz*</u>
7                                                     Yosef Peretz
                                                      Attorneys for Plaintiffs YESENIA
                                                      GUITRON and JUDI KLOSEK