UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YESENIA GUITRON and JUDI KLOSEK, | No. C 10-3461 CW (MEJ) |
| Plaintiffs, | **DISCOVERY ORDER RE: DOCKET NOS. 34-39** |
| v. | |
| WELLS FARGO BANK, N.A., et al., | |
| Defendants. | |
| _____/ | |

Pending before the Court are six joint discovery dispute letters filed on July 14, 2011. Dkt. Nos. 34-39. Having considered the parties' arguments, the Court rules as follows.

## I. BACKGROUND

The following background is taken from Plaintiffs Yesenia Guitron and Judi Klosek's (collectively, "Plaintiffs") Second Amended Complaint, filed April 29, 2011. Dkt. No. 26. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII") and section 806 of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, et seq. ("Sarbanes-Oxley"). Plaintiff Yesenia Guitron worked in the St. Helena Wells Fargo branch ("St. Helena branch") from March 2008 through her termination in January 2010. Sec. Am. Compl. ("SAC") ¶ 7. Plaintiff Judi Klosek has worked at the St. Helena branch since June 2009. *Id.* ¶ 8.

Plaintiffs' complaint centers around Wells Fargo's "Daily Solution Reward" plan, a financial-based incentive to Wells Fargo employees to induce and enhance banking activity by customers and potential customers. *Id.* ¶¶ 13, 15. According to this program, bankers at Wells Fargo are expected to induce customers to open additional or new accounts, as well as to accept other financial products and services. *Id.* ¶ 15. Products that a banker sells are counted by Wells Fargo as a "Daily Solution," and various products have a different "value" derived from the

1  potential profitability of the product.  *Id.*  Wells Fargo awards bonuses to its employees under the
2  Daily Solutions program based on the performance of the individual banker, the branch
3  performance, and the performance of Wells Fargo at the regional level.  *Id.* ¶ 16.  Wells Fargo
4  obligates all bankers to secure a quota of Daily Solutions, and if a banker fails to meet the quota,
5  disciplinary measures could be taken.  *Id.* ¶ 17.

6        Plaintiffs allege that they became aware of bankers at the St. Helena branch utilizing an
7  unethical practice known as "gaming" to increase their Daily Solutions credits.  *Id.* ¶¶ 27, 76.  This
8  practice included creating multiple accounts for a single customer without their permission, opening
9  and closing accounts improperly, forcing banking products on customers when the customers were
10 clearly confused by the product and did not necessarily want or need the product, and failing to
11 disclose necessary information to customers.  *Id.* ¶¶ 26, 27, 76.  Plaintiffs state that they filed verbal
12 and written complaints of bank fraud and material fraud with Wells Fargo managers, Human
13 Resources personnel, and Wells Fargo's Ethics Hotline.  *Id.* ¶ 134.  In response, Plaintiffs allege that
14 Defendants retaliated against them by issuing trumped-up formal employment warnings, negative
15 performance reviews, creating a hostile working environment, placing them on administrative leave,
16 and ultimately terminating Guitron.  *Id.* ¶ 136.

17       Plaintiffs bring causes of action for retaliation in violation of Sarbanes-Oxley and Title VII,
18 wrongful discharge, sexual and gender discrimination in violation of Title VII, and various related
19 state law causes of action.  The parties are now before the Court seeking resolution of six separate
20 discovery disputes.  The Court shall consider each in turn.

21                               **II.  DISCOVERY DISPUTES**

22 **A.  Plaintiff's Request to Compel Production of Documents Pertaining to the January 2010 Investigation at the St. Helena Branch**
23

24       In the first joint letter, Plaintiffs seek to compel supplemental responses and documents
25 responsive to Plaintiffs' Requests for Production of Documents ("RPDs"), Set Two, Nos. 185-186
26 and 188-189.  Dkt. No. 34.  These requests pertain to a January 2010 Climate Survey conducted by
27 Wells Fargo Human Resources Consultants Jodi Jacques and Aurelio Hurtado at the St. Helena
28

1 branch. *Id.* at 2. Plaintiffs state that they both made specific statements about the alleged pervasive
2 unethical sales practices at the St. Helena branch and the retaliation they suffered thereafter during
3 their interviews with Jacques and Hurtado. *Id.* at 3. Although Wells Fargo agreed to produce the
4 findings of the investigation and the investigators' notes of Plaintiffs' interviews, Plaintiffs seek
5 additional documents, including interview notes with other branch employees and actions taken as a
6 result of the investigation. *Id.*

7 Plaintiffs argue that Wells Fargo improperly objected to the discovery on the ground of its
8 employees' privacy rights, yet Defendants are using these rights as a shield to prevent discovery into
9 internal practices while also using those same internal practices as a sword in their affirmative
10 defenses. *Id.* at 4. In so doing, Plaintiffs contend that Wells Fargo waived any privacy protection.
11 Plaintiffs further argue that even if the Court finds the privacy privilege is not waived, the balance of
12 interests require disclosure because this case is already subject to a protective order which protects
13 third parties; the information is sought is not highly sensitive financial or personnel records; the
14 records are highly relevant to the issues in this case; the information is not available from any other
15 source as Wells Fargo maintains exclusive possession over the documents; and the public has an
16 interest in preventing employers from hiding behind their employees' privacy rights to conceal
17 unethical behavior. *Id.* at 4-5.

18 In response, Wells Fargo argues that Plaintiffs' request fails to establish the necessary
19 relevance to justify production of the documents they seek, which are protected by third-party
20 privacy rights. *Id.* at 5. Wells Fargo further argues that Jacques and Hurtado conducted a "climate
21 survey," which was not an investigation of Plaintiffs' alleged complaints, but rather consisted of
22 confidential interviews of all of the branch employees regarding their feelings about the store's work
23 climate. *Id.* Jacques and Hurtado did not ask the employees any questions about Plaintiffs' alleged
24 complaints or about unethical sales practices. *Id.* Wells Fargo also argues that the interviews were
25 conducted with a promise of confidentiality, and the information gathered should therefore not be
26 disclosed as it is not relevant to Plaintiffs' claims. *Id.*

27 "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any
28

3

1  party's claim or defense." Fed. R. Civ. P. 26(b)(1). However, the Court may limit the scope of
2  discovery to protect the privacy interests of third parties. Fed. R. Civ. P. 26(c); *Seattle Times Co. v.*
3  *Rhinehart*, 467 U.S. 20, 34-35, (1984). To evaluate privacy objections, the Court must balance the
4  party's need for the information against the individual's privacy right in his or her employment files.
5  *Tierno v. Rite Aid Corp.*, 2008 WL 3287035, at *3 (N.D. Cal. Jul. 31, 2008) (internal citations
6  omitted). First, "the claimant must have a 'legally protected privacy interest,' such as an interest in
7  precluding dissemination of sensitive information or in making intimate personal decisions without
8  outside intrusion; second, the claimant must have a 'reasonable expectation of privacy' founded on
9  broadly based community norms; third, the invasion of privacy must be 'serious'; and fourth, the
10 privacy interest must outweigh the countervailing interests, such as discovery rights." *Id.* (quoting
11 *Pioneer Elec., Inc. v. Superior Court*, 40 Cal.4th 360, 370-73 (2007)). As custodians of its
12 employees' personnel records, Wells Fargo has standing to assert its employees' privacy rights.
13 *Maldonado v. Sec'y of Calif. Dept. of Corr. and Rehab.*, 2007 WL 4249811, at *7 (E.D. Cal. Nov.
14 30, 2007).
15     Here, the Court finds that the requested discovery is not appropriate. First, although
16 Plaintiffs attempt to characterize the climate survey conducted by Jacques and Hurtado as an
17 investigation of Plaintiffs' alleged complaints about unethical sales practices, it appears that the
18 survey consisted of confidential interviews of all store employees regarding their feelings about the
19 branch's work climate. Jacques and Hurtado did not ask the store employees any questions about
20 Plaintiffs' alleged complaints or about unethical sales practices. Dkt. No. 34 at 5. Thus, the
21 interviews do not appear relevant or contain information likely to lead to relevant evidence. Further,
22 Wells Fargo produced to Plaintiffs the investigation files related to Plaintiffs' complaints, Jacques
23 and Hurtado's findings, and Jacques and Hurtado's notes from their interviews with Plaintiffs.
24 Because Plaintiffs have failed to establish the relevancy of the remaining requested documents,
25 Wells Fargo is not obligated to produce them. Moreover, even if the information was relevant,
26 Plaintiffs have failed to demonstrate that their need for it is sufficient to outweigh the employees'
27 privacy rights. Plaintiffs' request to compel production of these documents is therefore denied.
28

4

**B.    Plaintiffs' Request to Compel Production of Documents Pertaining to Complaints and Investigations of Gaming or Unethical Sales Conduct**

Next, Plaintiffs seek to compel supplemental responses and documents responsive to Plaintiffs' RPDs, Set One, Nos. 37-29 and 70-75. Dkt. No. 35. These requests seek documents pertaining to complaints, investigations into complaints, and resolution of the investigations of gaming or unethical sales conduct at the St. Helena branch from January 1, 2005 to the present that were made: (1) by Guitron to Wells Fargo employees; (2) by Wells Fargo employees to the Wells Fargo Ethics Hotline; and (3) by Wells Fargo employees to Wells Fargo's managers and Human Resources personnel. *Id.* Exs. A-C. Plaintiffs argue that the requested documents are relevant to Wells Fargo's affirmative defenses because it claims that it exercised reasonable care to prevent or correct any improper behavior, and that it made a good faith effort to comply with the law, but is now refusing to provide any evidence that it, in fact, took these steps by conducting an investigation or taking steps consistent with the results of that investigation. *Id.* at 4.

In response, Wells Fargo argues that Plaintiffs' request fails to establish the necessary relevance to justify production of the documents they seek. Specifically, it argues that third-party store employees' investigation documents are not relevant to Plaintiffs' claims because Plaintiffs do not need to show that other employees engaged in unethical sales practices to prove their retaliation claims. *Id.* at 5. Wells Fargo further argues that the documents are privacy protected because they are Wells Fargo employee personnel records. *Id.* at 5-6.

Upon review of the parties' arguments, the Court finds that further discovery is inappropriate. First, Plaintiffs' requests are overbroad. Although their complaint focuses on retaliatory and discriminatory conduct by Defendants based upon Plaintiffs' own complaints, the requests seek information pertaining to complaints and investigations by *any* Wells Fargo employees. Second, Wells Fargo states that it has already produced the complaints Plaintiffs made against other employees, all investigation files pertaining to their own complaints, and any investigation files related to any complaints about Plaintiffs. *Id.* at 4, 6. Thus, it appears that all relevant documents have been produced. Third, even if the Court were to find that the third-party

complaints and investigations were relevant, any minimal relevance is outweighed by the third-parties' privacy interests. *Tierno*, 2008 WL 3287035, at *3.

**C.    Plaintiffs' Request to Compel Production of Documents Pertaining to Complaints and Investigations of Gaming/Unethical Sales Conduct by Corina Zavaleta and Mary Crisp**

In the parties' third letter, Plaintiffs seek to compel supplemental responses and documents responsive to: (1) RPDs Nos. 66-69 and 174-77, which seek documents pertaining to any complaints of gaming or unethical sales conduct by Corina Zavaleta, Plaintiffs' co-worker at the St. Helena branch, and any ensuing investigations from January 1, 2005 to the present; and (2) RPDs Nos. 178-81 that request a similar set of documents pertaining to an incident when Mary Crisp, another co-worker, allegedly falsified customer records in November 2009, which Plaintiffs allege Guitron allegedly reported to Wells Fargo's Ethics Hotline. Dkt. No. 36. Plaintiffs also seek to compel responses to Request for Admissions ("RFAs"), Set One Nos. 73-75, which ask Wells Fargo to admit that Zavaleta was either terminated or resigned only to be later rehired by Wells Fargo. *Id.*

Plaintiffs allege that Zavaleta enrolled customers in banking services or set up new accounts for them without the customers' consent, and that Plaintiffs repeatedly made complaints, but the branch management refused to curb those practices. *Id.* at 3. Plaintiffs also allege that Guitron made a complaint to the Ethics Hotline about Crisp, when she discovered that Zavaleta had falisfied a customer's documents to get more credits and reported it to Crisp, who proceeded to falsify the expiration date on the banking records and open another account for the same customer. *Id.* Plaintiffs allege that after these complaints were made, Zavaleta ceased working at the branch. *Id.* Plaintiffs further allege they were never provided with an explanation for her absence, but were informed that there would be no further investigation of Zavaleta because she no longer worked for Wells Fargo. *Id.* Plaintiffs argue that the requested discovery is relevant because Wells Fargo claims that it exercised reasonable care to prevent improper behavior and made a good faith effort to comply with the law, but is now refusing to provide any evidence that they were aware of the conduct of Zavaleta and Crisp, and any evidence that they took steps in response to complaints against Zavaleta and Crisp. *Id.* at 4.

6

In response, Wells Fargo argues that Zavaleta's and Crisp's investigation and disciplinary records are not relevant to Plaintiffs' claims because Plaintiffs do no need to show that Zavaleta or Crisp engaged in unethical sales practices to prove their retaliation claims. *Id.* at 6. Wells Fargo also argues that the requested information is privacy protected because Plaintiffs seek personnel records, but they have failed to show a compelling need to overcome these privacy interests. *Id.*

Upon review of the parties' arguments, the Court finds that further discovery is inappropriate. Wells Fargo has already produced Plaintiffs' complaints related to Zavaleta and Crisp in response to RPDs 174 and 178. *Id.* It is unclear how the actual investigations are relevant to Plaintiffs' claims, as Zavaleta's and Crisp's personnel records do not appear related to Plaintiffs' employment, and Plaintiffs already can establish that Wells Fargo was on notice of their complaints given that Wells Fargo has disclosed Plaintiffs' complaints. Morever, even if the Court were to find that Zavaleta's and Crisp's records were relevant, any minimal relevance is outweighed by the third-parties' privacy interests. *Tierno*, 2008 WL 3287035, at *3.

### D. Plaintiffs' Request to Compel Responses to Interrogatories Regarding Corrective Actions

In the parties' fourth letter, Plaintiffs seek to compel responses to Interrogatories, Set Two Nos. 13 and 14, which ask for the names of all employees at the St. Helena branch subjected to corrective disciplinary action regarding incidents of gaming and loss prevention. Dkt. No. 37 at 3, Ex. A. In responding to Plaintiffs' interrogatories, Wells Fargo stated as follows: "Between March 2008 and December 2010, at least four team members, including Plaintiff Klosek, received written corrective action for loss exposure." *Id.* Ex. C. Plaintiffs argue that the names of the employees are necessary for them to establish statistical evidence of Defendants' application of corrective or disciplinary measures in fostering an unethical atmosphere within the branch and in retaliating against employees who report these ethical violations. *Id.* at 4.

In response, Wells Fargo argues that evidence of third-party employees' corrective action for committing unethical sales practices has no probative connection to whether it retaliated against an employee who reported a complaint. *Id.* at 5. Wells Fargo further argues that fewer than 20

7

employees worked at the St. Helena branch, so any purported statistical evidence would be meaningless and unreliable in such a small sample. *Id.* Finally, Wells Fargo again raises a privacy objection, maintaining that the requested information seeks personnel records, and Plaintiffs have failed to show a compelling need to overcome the privacy rights of third-party employees. *Id.* at 5-6.

Upon review of the parties' arguments, the Court finds that further discovery may be appropriate. Although the relevance of third-party corrective action records is not entirely clear, Wells Fargo has already agreed to identify the number of employees at the St. Helena branch who received corrective action for loss exposure. *Id.* at 6. Although Plaintiffs argue that the names of the employees are necessary for them to establish statistical evidence of Defendants' application of corrective or disciplinary measures, it appears that identifying the number of employees, without the employees' names, satisfies this purpose. However, because Plaintiff Klosek received an informal warning for loss exposure, Wells Fargo limited production to those employees that received corrective action for loss exposure. Plaintiffs' interrogatories are broader, in that they seek the identity of all persons subjected to corrective action for gaming and/or loss exposure. As Wells Fargo states that fewer than 20 employees worked at the St. Helena branch, the Court finds that it would not be burdensome for Wells Fargo to respond as to both gaming and loss exposure corrective action numbers. Further, no privacy rights would be violated as the employees' identities are not being produced. Accordingly, the Court ORDERS Wells Fargo to identify the number of employees (but not their identities) at the St. Helena branch who received corrective action for gaming and/or loss exposure.

**E.     Plaintiffs' Request to Compel the Production of Plaintiff Guitron's Personal Notebooks**

In the parties' fifth letter, Plaintiffs seek the production of contemporaneous notebooks Plaintiff Guitron created during her employment at the St. Helena branch in an unredacted form or, alternatively, for Wells Fargo to produce a privilege log on the redaction. Dkt. No. 38. Guitron states that she created several notebooks, which she labeled "Jessie's Personal Notebooks," during her employment to preserve contemporaneous personal recollections of the alleged ongoing

UNITED STATES DISTRICT COURT
For the Northern District of California

1  unethical sales activities at the branch and the retaliatory treatment she was experiencing. *Id.* at 3.
2  Guitron alleges that Wells Fargo did not provide the notebooks to her when she was terminated or
3  thereafter. *Id.* Wells Fargo admits that it has possession of four notebooks, but asserts that the
4  privacy rights of customers with personal or financial information within the notebooks prevented it
5  from producing the notebooks in their entirety. *Id.* After meet and confer efforts between the
6  parties, Wells Fargo agreed to produce copies of the notebooks with the alleged protected
7  information redacted. *Id.*

8  Plaintiffs seek judicial intervention in one of three ways: (1) production of the notebooks in
9  full, unredacted form, given that the notes were made by Guitron based on her personal recollection
10 and observation; (2) production of a privilege log; or (3) compelling Wells Fargo to make the
11 documents available for an *in camera* review to determine if they should be produced in unredacted
12 form. *Id.* at 4. Plaintiffs argue that by refusing to produce a privilege log and then asserting the
13 right to privacy as a basis for redacting documents, Wells Fargo is requiring Plaintiffs to remember
14 and respond to questions about customers but also refusing to produce information that was created
15 by Plaintiffs about those very customers to refresh their recollection. *Id.* at 5.

16 In response, Defendants argue that Plaintiffs have not established a failure by Wells Fargo to
17 provide a required privilege log. *Id.* Specifically, Defendants argue that the personal customer
18 information they redacted from the notebooks is not relevant and therefore not discoverable. *Id.*
19 Defendants further argue that the material is protected by third-party privacy rights. *Id.* Defendants
20 maintain that the overwhelming majority of the information in the four notebooks consists of
21 customer information, such as addresses, bank account numbers, social security numbers, dates of
22 birth, and other highly sensitive and confidential information. *Id.* As such, Defendants contend that
23 Guitron maintained these notebooks as part of her banker job duties, including developing and
24 maintaining a customer book of business, and that the notebooks therefore belong to Wells Fargo.
25 *Id.* Defendants argue that, regardless of Guitron's attempt to retrospectively re-characterize the
26 nature of the notebooks, there is no evidence that she maintained them to preserve her
27 contemporaneous personal recollections, as she now claims. *Id.* at 6.
28

1    Defendants further argue that the information redacted from the notebooks consists of
2 narrowly-circumscribed categories of highly sensitive and private customer information that is not
3 relevant to the claims and defenses pled in this action. *Id.* Defendants contend that the redacted
4 information consists of customers' (1) contact information (addresses, telephone numbers, e-mail
5 addresses); (2) personal information (social security numbers, drivers' license numbers, birth dates,
6 and the like); and (3) financial account information (bank account numbers, credit card numbers, and
7 similar account numbers). *Id.* Defendants did not redact any other information, including customer
8 names and any notes Guitron may have made regarding customers, and any information that
9 potentially has some relevance to Plaintiffs' claims. *Id.* Defendants thus maintain that they have
10 identified the specific categories of customer information they redacted from the notes. *Id.*

11    Upon review of the parties' arguments, the Court finds that Defendants need not produce the
12 redacted information as it consists of customers' private information that is not relevant to Plaintiffs'
13 claims. Plaintiffs fail to show how such information is relevant, other than arguing that Guitron
14 created the notebooks based on her personal recollection and observations. This does not establish
15 relevancy. However, Defendants do not deny that they redacted large blocks of text from the
16 notebooks, and the Court understands Plaintiffs' concerns regarding Defendants' redaction of these
17 expansive segments without explanation. Although Defendants argue that the information is not
18 relevant, they present no authority showing that a party can produce a document with large portions
19 redacted and no explanation as to the redactions. Further, Defendants argue that even if the
20 information is relevant, it is protected by third-party privacy rights. However, as Defendants have
21 already produced the documents, it would seem appropriate for Defendants to produce a privilege
22 log that describes the nature of the redacted portions that will enable Plaintiffs to properly assess the
23 claim. Accordingly, the Court ORDERS Defendants to provide a privilege log in compliance with
24 Federal Rule of Civil Procedure 26(b)(5).

25 **F.    Plaintiffs' Request to Compel the Production of a Privilege Log**

26    In the parties' sixth letter, Plaintiffs seek to compel a privilege log for all documents they
27 claim Wells Fargo withheld in response to RPDs, Sets One and Two, based on attorney-client
28

10

privilege, attorney work product doctrine, and third parties right to privacy. Dkt. No. 39. However, Plaintiffs fail to address any specific requests in this letter, and, as discussed above, the Court finds that Defendants need not provide supplemental responses to any document requests addressed in the previous five letters. Accordingly, Defendants need not provide any further response.

### III. CONCLUSION

Based on the analysis above, the Court ORDERS as follows:

1) Defendants need not provide a further response to Plaintiffs' requests regarding the climate survey conducted by Jodi Jacques and Aurelio Hurtado.

2) Defendants need not provide supplemental responses and documents responsive to Plaintiffs' RPDs, Set One, Nos. 37-29 and 70-75.

3) Defendants need not provide supplemental responses and documents responsive to (1) RPDs Nos. 66-69 and 174-77, (2) RPDs Nos. 178-81, and (3) RFAs Nos. 73-75.

4) Defendants shall respond to Interrogatories Nos. 13 and 14 by identifying the number of employees (but not their identities) at the St. Helena branch who received corrective action for gaming and/or loss exposure; and

5) Defendants shall provide a privilege log in compliance with Rule 26(b)(5) for any redactions in Plaintiff Guitron's notebooks.

**IT IS SO ORDERED**

Dated: August 4, 2011

_____
Maria-Elena James
Chief United States Magistrate Judge